**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

SHAWN BRIDGES; LEVANDER JONES;
LAKEITHIA WEBB; TASHIMA
NICHOLSON; CALVIN THORPE, JR.;
LATIA THORPE; CYNTHIA WALKER;
EVAN THORPE; CALVIN THORPE, SR.;
SAMUEL WILLIAMS; JANICE SPRINGS;
TERRY POSTELL; KENNETH MOODY;
FRANK WILLIS; JOSEPH KAHOE;
NALLIE HAIRSTON; KENWIN BAYLOR;
CALVIN POSTELL; MARYLAND STATE
CONFERENCE OF NAACP BRANCHES,
on behalf of itself, its members, and
the plaintiff class; GARY D.
RODWELL, on behalf of himself and
all other persons similarly situated;
JOHNSTON E. WILLIAMS, on behalf of          No. 05-1078
himself and all other persons
similarly situated; JAMES E. ALSTON,
JR., on behalf of himself and all
other persons similarly situated;
YANCEY TAYLOR, on behalf of
herself, their son Y.T., Jr., and all
other persons similarly situated;
ALESHIA TAYLOR, on behalf of
herself, her minor son, Y.T., Jr.,
and all other persons similarly
situated; GEORGE W. TAYLOR, JR., on
behalf of himself and all other
persons similarly situated; ERIC
ANTHONY, on behalf of himself and
all other persons similarly situated;

NELSON D. WALKER, on behalf of
himself and all other persons
similarly situated; RAS RA I, f/k/a
MECCA AGUNDABO, I, on behalf of
himself and all other persons
similarly situated; JOHN S. MEANS;
KENNETH R. JEFFRIES; DIANA
DESMOINES; WILLIAM M. BERRY;
VERNA A. BAILEY, The above on
behalf of herself and all other
persons similarly situated,
                    *Plaintiffs-Appellants,*

                    v.

DEPARTMENT OF MARYLAND STATE
POLICE; DAVID B. MITCHELL,
individually and in his official
capacity as Secretary of the
Department of Maryland State
Police; JESSE GRAYBILL, individually
and in his official capacity as
Commander of the Field Operations
Bureau of the Department of
Maryland State Police; GEORGE H.
HALL, individually and in his
official capacity as Commander of
the Northern Region of the field
Operations Bureau of the
Department of Maryland State
Police; VERNON BETKEY, individually
and in his official capacity as a
Maryland State Police Barrack
Commander; KEVEN L. GRAY,
individually and in his official
capacity as a Maryland State Police
Barrack Commander; JOHN E.

APPLEBY, individually; GEORGE P. BRANTLY, individually and in his official capacity as a Maryland State Trooper; BERNARD M. DONOVAN, individually and in his official capacity as a Maryland State Trooper; STEVEN W. DULSKI, individually and in his official capacity as a Maryland State Trooper; MELVIN FIALKEWICZ, individually; JOHN R. GREENE, individually and in his official capacity as a Maryland State Trooper; STEVEN L. HOHNER, individually and in his official capacity as a Maryland State Trooper; CLIFFORD T. HUGHES, individually and in his official capacity as a Maryland State Trooper; DAVID B. HUGHES, individually and in his official capacity as a Maryland State Trooper; MICHAEL T. HUGHES, individually and in his official capacity as a Maryland State Trooper; STEVEN O. JONES, individually and in his official capacity as a Maryland State Trooper; JAMES E. NOLAN, individually and in his official capacity as a Maryland State Trooper; PAUL J. QUILL, individually and in his official capacity as a Maryland State Trooper;

CHRISTOPHER TIDEBERG, individually
and in his official capacity as a
Maryland State Trooper; ERNEST S.
TULLIS, individually and in his
official capacity as a Maryland
State Trooper; MICHAEL D. WANN,
individually and in his official
capacity as a Maryland State
Trooper; BILLY WHITE, individually
and in his official capacity as a
Maryland State Trooper; JOHN L.
WILHELM, individually and in his
official capacity as a Maryland
State Trooper; ERIC HARBOLD,
individually and in his official
capacity as a Maryland State
Trooper; MARK A. RHINEHART,
individually and in his official
capacity as a Maryland State
Trooper,
                    *Defendants-Appellees.*

SHAWN BRIDGES; LEVANDER JONES;
LAKEITHIA WEBB; TASHIMA
NICHOLSON; CALVIN THORPE, JR.;
LATIA THORPE; CYNTHIA WALKER;
EVAN THORPE; CALVIN THORPE, SR.;
SAMUEL WILLIAMS; JANICE SPRINGS;       No. 05-1691
TERRY POSTELL; KENNETH MOODY;
FRANK WILLIS; JOSEPH KAHOE;
NALLIE HAIRSTON; KENWIN BAYLOR;
CALVIN POSTELL; MARYLAND STATE
CONFERENCE OF NAACP BRANCHES,
on behalf of itself, its members,

and the plaintiff class; GARY D. RODWELL, on behalf of himself and all other persons similarly situated; JOHNSTON E. WILLIAMS, on behalf of himself and all other persons similarly situated; JAMES E. ALSTON, JR., on behalf of himself and all other persons similarly situated; YANCEY TAYLOR, on behalf of herself, their son Y.T., Jr., and all other persons similarly situated; ALESHIA TAYLOR, on behalf of herself, her minor son, Y.T., Jr., and all other persons similarly situated; GEORGE W. TAYLOR, JR., on behalf of himself and all other persons similarly situated; NELSON D. WALKER, on behalf of himself and all other persons similarly situated; MECCA AGUNDABO, I, on behalf of himself and all other persons similarly situated; JOHN S. MEANS; KENNETH R. JEFFRIES; DIANA DESMOINES; WILLIAM M. BERRY; VERNA A. BAILEY, The above on behalf of herself and all other persons similarly situated,

*Plaintiffs-Appellants,*

v.

DEPARTMENT OF MARYLAND STATE POLICE; DAVID B. MITCHELL, individually and in his official capacity as Secretary of the Department of Maryland State Police; JESSE GRAYBILL, individually and in his official capacity as Commander of the Field Operations Bureau of the Department of Maryland State Police; GEORGE H. HALL, individually and in his official capacity as Commander of the Northern Region of the field Operations Bureau of the Department of Maryland State Police; VERNON BETKEY, individually and in his official capacity as a Maryland State Police Barrack Commander; KEVEN L. GRAY, individually and in his official capacity as a Maryland State Police Barrack Commander; JOHN E. APPLEBY, individually; GEORGE P. BRANTLY, individually and in his official capacity as a Maryland State Trooper; BERNARD M. DONOVAN, individually and in his official capacity as a Maryland State Trooper; STEVEN W. DULSKI, individually and in his official capacity as a Maryland State Trooper; MELVIN FIALKEWICZ, individually; JOHN R. GREENE,

individually and in his official capacity as a Maryland State Trooper; STEVEN L. HOHNER, individually and in his official capacity as a Maryland State Trooper; CLIFFORD T. HUGHES, individually and in his official capacity as a Maryland State Trooper; DAVID B. HUGHES, individually and in his official capacity as a Maryland State Trooper; MICHAEL T. HUGHES, individually and in his official capacity as a Maryland State Trooper; STEVEN O. JONES, individually and in his official capacity as a Maryland State Trooper; JAMES E. NOLAN, individually and in his official capacity as a Maryland State Trooper; PAUL J. QUILL, individually and in his official capacity as a Maryland State Trooper; CHRISTOPHER TIDEBERG, individually and in his official capacity as a Maryland State Trooper; ERNEST S. TULLIS, individually and in his official capacity as a Maryland State Trooper; MICHAEL D. WANN,

individually and in his official capacity as a Maryland State Trooper; BILLY WHITE, individually and in his official capacity as a Maryland State Trooper; JOHN L. WILHELM, individually and in his official capacity as a Maryland State Trooper; ERIC HARBOLD, individually and in his official capacity as a Maryland State Trooper; MARK A. RHINEHART, individually and in his official capacity as a Maryland State Trooper,

*Defendants-Appellees.*

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Paul W. Grimm, Magistrate Judge.
(CA-98-1098-PWG)

Argued: February 2, 2006

Decided: March 20, 2006

Before WILKINS, Chief Judge, and NIEMEYER and
WILLIAMS, Circuit Judges.

---

Affirmed in part; dismissed in part by published opinion. Judge Niemeyer wrote the opinion, in which Chief Judge Wilkins and Judge Williams joined.

---

**COUNSEL**

**ARGUED:** Corey Lynn Stoughton, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, New York, New York, for Appellants.

Maureen Mullen Dove, Deputy Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellees. **ON BRIEF:** Reginald Shuford, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, New York, New York; Deborah A. Jeon, ACLU FOUNDATION OF MARYLAND, Baltimore, Maryland; Charles Christopher Brown, BROWN, GOLDSTEIN & LEVY, L.L.P., Baltimore, Maryland; William J. Mertens, Bethesda, Maryland, for Appellants. J. Joseph Curran, Jr., Attorney General of Maryland, Elizabeth Marzo Borinsky, Assistant Attorney General, Baltimore, Maryland, for Appellees.

## OPINION

NIEMEYER, Circuit Judge:

The Maryland State Conference of NAACP Branches ("NAACP") and 18 individuals commenced this class action on April 10, 1998, against the Maryland State Police and 24 of its officers for racially profiling minority motorists on Interstate 95 in Maryland. The plaintiffs requested declaratory and injunctive relief, damages, and attorneys fees.

After the district court entered an administrative order denying the plaintiffs' motion for class certification without prejudice to its later renewal, the representative parties abandoned their efforts to represent a class. Instead, they filed a motion to amend their complaint to add 18 individuals as new plaintiffs. By order dated July 26, 2004, the district court denied their motion to amend, concluding that the new parties could not be added to the case because their claims were barred by the applicable statute of limitations. The 18 would-be plaintiffs then filed a motion on their own behalf, through counsel, for reconsideration, and by an order dated December 9, 2004, the district court also denied that motion. The plaintiffs and would-be plaintiffs appealed from the district court's orders denying the plaintiffs' motion to amend and denying the would-be plaintiffs' motion for reconsideration, challenging the district court's application of the statute of limitations.

Five months after the district court denied the motion for reconsideration and after the plaintiffs and would-be plaintiffs filed appeals, the plaintiffs and would-be plaintiffs filed a motion to have the district court's two orders certified as final judgments under Federal Rule of Civil Procedure 54(b), asserting that "there is no just reason for delay of the entry of judgment as to the putative plaintiffs." The district court signed the proposed order electronically on May 25, 2005, but never entered a corresponding judgment under Rule 58(a). The plaintiffs and would-be plaintiffs again appealed.

Sorting out the procedural morass created by these proceedings, we conclude that we have jurisdiction to consider some of the appeals and that we must dismiss the others for lack of jurisdiction. On the appeals for which we have jurisdiction, we affirm for the reasons given herein.

I

The complaint of the NAACP and the 18 named individuals, which was brought under 42 U.S.C. § 1983, alleged that the defendants engaged "in a continuing pattern and practice of race-based stops, detentions, and searches of minority motorists traveling Interstate 95 through Maryland," in violation of the Fourth and Fourteenth Amendments of the United States Constitution (for unreasonable searches and seizures; for denying them equal protection; and for impinging on their right to travel), Title VI of the 1964 Civil Rights Act, and the Maryland Declaration of Rights. The plaintiffs purported to represent a class of "all innocent minority motorists who have been since January 1, 1993 or who will be in the future, illegally stopped, detained, and/or searched by Maryland state troopers along Interstate 95, without just cause and based upon their race and/or national origin." The plaintiffs requested declaratory, equitable, and monetary relief; class certification under Federal Rule of Civil Procedure 23(b)(2) for declaratory and injunctive relief and under Rule 23(b)(3) for damages; and attorneys fees under 42 U.S.C. § 1988.

On the defendants' motion, the district court dismissed each claim that arose before April 10, 1995, applying Maryland's three-year statute of limitations. *See Maryland State Conf. of NAACP Branches v.*

*Maryland Dep't of State Police*, 72 F. Supp. 2d 560, 569 (D. Md. 1999).

The plaintiffs filed a motion for class certification on March 8, 2000. Following the exchange of some discovery, the defendants filed their opposition to the motion in January 2001. When the plaintiffs requested more discovery in lieu of filing a reply brief, the district court granted their request and entered an order dated February 22, 2001, denying the motion for class certification without prejudice and providing that the motion would "automatically [be] considered renewed" if the plaintiffs filed a reply to the defendants' opposition to class certification.

Promptly thereafter, the parties engaged in settlement negotiations and by March 2002, reached agreement "in principle" on a partial settlement involving only the representative parties. The prospective class members were so advised, as counsel for the plaintiffs testified by affidavit:

> By late winter of 2002, there was agreement at least in principle on the points that eventually were embodied in the Consent Decree, and the named Plaintiffs *along with prospective class members* were encouraged to attend a briefing on the terms. On March 23, 2002, the meeting was held in the federal courthouse. Plaintiffs and prospective class members attended and heard from the Court and counsel.

(Emphasis added). Indeed, counsel asserts that at this March 2002 meeting, the attending prospective class members, including would-be plaintiffs who filed this appeal, "voted to approve the settlement."

By February 2003, the individual plaintiffs and the defendants completed the details of their settlement agreement and consent decree, and on May 23, 2003, the district court approved the consent decree. While the settlement agreement and consent decree resolved the individual plaintiffs' claims for declaratory and injunctive relief, as well as their claims to date for attorneys fees, the agreement did not dispose of the individual plaintiffs' damages claims, nor did it bar them from resurrecting a class action for damages under Rule 23(b)(3).

One month later, however, on June 26, 2003, the plaintiffs formally announced that they were abandoning their class action in its entirety. They wrote the court that their "request for [class] certification under Rule 23(b)(2) ha[d] been mooted by entry of the Consent Decree." And as to their request for class certification under Rule 23(b)(3), they wrote:

> We have concluded that it is desirable at this juncture for the case to proceed on individual motorists' and passengers' claims only, and not as a class action.

Recognizing that there might be statute of limitations problems for absent class members, the plaintiffs advised the court:

> [W]e therefore feel obligated to protect absent class members, to the fullest extent possible, from statute of limitations defenses, even if we are confident that such defenses are without merit. *One way to seek such protection would be to request leave to amend the complaint by adding known but absent class members as additional named plaintiffs, so that their claims could relate back to the initial filing of this case in April 1998, as provided by Rule 15*. But this course could complicate management of the case. It could be simpler if absent class members who still want to press their individual claims were encouraged to file them as separate actions, whether in this Court or in state court.

(Emphasis added).

In response to the plaintiff's advice to the court, the state defendants responded:

> As to the future course of litigation, given that the equitable claims have been resolved in the Consent Decree and that no class has been certified, it is our understanding that what remains to be litigated is a set of individual damages claims arising from separate, unrelated traffic stops.

\*    \*    \*

> [W]hile we understand that plaintiffs' counsel is concerned about statutes of limitation issues and we are willing to discuss those issues, we cannot agree to stipulate away any statute of limitations defenses to which our clients are entitled. This is particularly so *because in most cases the specific trooper connected to a complainant's particular incident has not been identified.*

(Emphasis added).

The plaintiffs replied with a proposal to send absent members of the abandoned class a notice advising each member to seek prompt legal advice. The notice suggested, "Any such person who wants to claim monetary damages should consider *promptly filing his or her own lawsuit, or filing a formal motion to intervene in this lawsuit*" (emphasis added). Because the class action had been abandoned, however, the court had no Rule 23 obligation or mechanism to notify class members originally identified in the complaint and did not do so. So the plaintiffs, as they have alleged, informally advised some 100 persons who they believed might have had individual claims for being stopped on Interstate 95.

On April 15, 2004, more than three years after the district court's administrative order denying class certification and more than two years after the class members were briefed on and voted to approve the settlement and consent decree, the plaintiffs filed a motion to amend their complaint to add 18 individuals from the class as new plaintiffs. All purported to have damages claims against the Maryland State Police for being stopped and searched on Interstate 95 during the three-year period before the commencement of this action (from April 10, 1995, to April 10, 1998), and none of their claims arose from police stops involving any of the named plaintiffs.

By order dated July 26, 2004, the district court denied the motion to amend to add the 18 plaintiffs because the 18 would-be plaintiffs' claims were barred by Maryland's three-year statute of limitations, citing *Grand-Pierre v. Montgomery County*, 627 A.2d 550 (Md. Ct. Spec. App. 1993) (Motz, J.). In *Grand-Pierre*, the Maryland court held that when a party seeks to amend his complaint to add a new party, with his own cause of action, to the proceedings, the cause of

action of that party has its own statute of limitations governed by its filing date and not that of the original plaintiff. *Grand-Pierre*, 627 A.2d at 553. Because the 18 would-be plaintiffs proposed to state separate and distinct causes of action, the court held that their filing date did not relate back to the original commencement date of the action and therefore were barred by the statute of limitations.

Thereafter, the would-be plaintiffs, now represented by their own counsel, filed their own motion requesting the court to reconsider its order "excluding them from this case." They argued that their claims were not barred by the statute of limitations because the running of the limitations period had been suspended by the filing of this class action and the district court's order denying class certification for only administrative reasons did not end the class action and therefore the tolling, citing *American Pipe & Construction v. Utah*, 414 U.S. 538 (1974), and *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983). The district court rejected the argument, noting that the plaintiffs had abandoned their plan to seek class certification:

> [T]o ask the Court and the Defendants to remain in legal limbo so that Plaintiffs can expand the number of individuals seeking to bring individual claims that would otherwise be time barred, when they have abandoned their plan to seek class certification, is not in keeping with the principles articulated in *American Pipe* and *Crown, Cork & Seal*.

Responding to the would-be plaintiffs' claim that denying their claims on limitations grounds would be unfair, the district court stated:

> Plaintiffs waited more than three years to seek amendment to their original complaint to add additional parties after Judge Blake denied class action status. Further, Plaintiffs gave notice to the Court on June 26, 2003, that they had no intention of pursuing class-action status. Despite this announcement, they waited an additional nine months before seeking leave to amend their complaint to add the new parties. Rather than waiting — ultimately to their peril — this period of time, Plaintiffs could have sought formal clarification of the effect of Judge Blake's order, renewed their class action motion immediately, or endeavored to

> timely amend their complaint to add individual claims on the basis that the *American Pipe* tolling principles applied in Maryland. They chose not [to] do so.

The would-be plaintiffs noticed this appeal on January 7, 2005, from both the district court's July 26, 2004 order denying plaintiffs' motion to amend and the district court's December 9, 2004, order denying would-be plaintiffs' motion for reconsideration. The plaintiffs in this action also appealed both orders, but they did not file their appeal until April 7, 2005. Apparently unsure of the appealability of any of the proposed orders, the parties filed a motion five months after the latest of the district court's orders requesting that the court direct entry of final judgment as to the orders, under Federal Rule of Civil Procedure 54(b), because there was "no just reason for delay of the entry of judgment *as to the putative plaintiffs*" (emphasis added). While the district court electronically signed the order proposed by the parties, no Rule 54(b) judgment was ever entered with respect to the would-be plaintiffs under Rule 58(a). During the pendency of this appeal, the named plaintiffs and the defendants have continued litigating the damages claims in the district court.

## II

We address first our jurisdiction, noting that the issue is entangled by procedural maneuvering and mistakes.

The motion to amend was made by the NAACP and 18 individual plaintiffs. The court denied that motion on July 26, 2004, but the plaintiffs did not appeal it until April 7, 2005. The would-be plaintiffs, who were never parties to the action, appealed this order on January 7, 2005.

The motion for reconsideration was made by the 18 would-be plaintiffs, who were represented by their own counsel. The court denied that motion on December 9, 2004, and the would-be plaintiffs timely appealed on January 7, 2005. The plaintiffs, even though they did not join that motion, nonetheless appealed it, and their appeal was not filed until April 7, 2005.

For neither order were the 18 would-be plaintiffs actual parties in this action. Yet they, together with the plaintiffs, requested a Rule 54(b) certification that both the district court's July 26, 2004 order and its December 9, 2004 order were "judgments." They filed this motion *after* they had filed their appeals. The district court granted their motion by a paperless docket entry, but it never entered a Rule 54(b) judgment in accordance with Rule 58(a). *See United States v. Indrelunas*, 411 U.S. 216, 221-22 (1973) (holding that separate document requirement of Rule 58 is mandatory). Nevertheless, within 30 days after the district court granted the certification order, the plaintiffs and the would-be plaintiffs appealed again.

Troubling, in this scenario, is the fact that the plaintiffs were represented by experienced counsel who recognized that the course open for the would-be plaintiffs to follow would be to file separate actions or motions to intervene in this action. This is precisely what the plaintiffs proposed to the district court for its notice to the abandoned class members. Yet, it is apparent from the record that counsel for the plaintiffs and would-be plaintiffs adopted a considered strategy that the plaintiffs would file a motion to amend the complaint in this action — not that would-be plaintiffs would file a separate action or a motion to intervene — in an effort to get around difficult statute of limitations questions that attended the claims of the 18 would-be plaintiffs. They hoped, despite Maryland law to the contrary, that an amended complaint would provide the 18 would-be plaintiffs with the original filing date of this action in April 1998, in lieu of the August 5, 2004 filing date of their motion for reconsideration.

Thus, the would-be plaintiffs purposefully did not file a motion to intervene pursuant to Rule 24. Yet, faced with questions of appealability and standing raised by this court, the would-be plaintiffs now argue that they "should be deemed to have proceeded under Rule 24." They maintain "that proceeding under Rule 24 rather than Rule 15 should be treated as functional equivalents in terms of applicable standards of review." They argue that a party "should not lose a significant right merely due to the label placed on a procedural act."

Our first order of business, therefore, must be to decide which parties and issues are properly before us on appeal.

Congress conferred jurisdiction on courts of appeals in 28 U.S.C. §§ 1291 and 1292, providing jurisdiction over only final orders and certain interlocutory and collateral orders. A denial of a motion to amend a complaint is not a final order, nor is it an appealable interlocutory or collateral order. Accordingly, we have no jurisdiction over the original plaintiffs' appeal of the district court's July 26, 2004 order denying their motion to amend the complaint to add new party plaintiffs to the action. Even if the order were somehow appealable, the original plaintiffs, who were and could be the only parties to the motion to amend, did not timely appeal the district court's order. *See* Fed. R. App. P. 4(a)(1); *see also Browder v. Director, Dep't of Corrections*, 434 U.S. 257, 264 (1978) ("This 30-day time limit [for appealing] is mandatory and jurisdictional" (internal quotation marks omitted)); *Shah v. Hutto*, 722 F.2d 1167, 1167 (4th Cir. 1983) (same).

By force of the same reasoning, we also lack jurisdiction to hear the original plaintiffs' appeal of the district court's order denying the would-be plaintiffs' motion for reconsideration of the district court's July 26, 2004 order denying the amendment. The denial of reconsideration of a nonappealable order is not a final order. Because the plaintiffs did not join the motion for reconsideration, they also have no standing to appeal its denial. And again, even if that order were final and the plaintiffs had standing, their appeal was untimely, having been filed on April 7, 2005.

Because the 18 would-be plaintiffs never became parties to the action, they have no standing to appeal either the district court's July 26, 2004 order denying the plaintiffs' motion to amend or the district court's order denying reconsideration of the motion to amend. Moreover, the would-be plaintiffs' appeal from the denial of the motion to amend was untimely. Their appeal from the denial of the motion for reconsideration, however, was timely.

Finally, Rule 54(b) does not provide the parties or the district court with the authority to convert an order denying a motion to amend or denying reconsideration of that motion into an order that "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties," as required by Rule 54(b). *See Curtis-Wright Corp. v. General Elect. Co.*, 446 U.S. 1, 7 (1980) (district courts are authorized to use Rule 54(b) to certify final judgments — "'final' in the

sense that it is an ultimate disposition of an individual *claim* entered in the course of a multiple claims action" (internal quotation marks omitted) (emphasis added)). The motion to amend and the motion for reconsideration of the motion to amend adjudicated no party's "claims"; the would-be plaintiffs were never "parties" whose "rights and liabilities" were adjudicated; and the actual plaintiffs' own claims were not in any way adjudicated by the district court's ruling. In addition, the plaintiffs and would-be plaintiffs' second appeal filed after the court granted the Rule 54(b) motion was not taken from a final judgment because a judgment was not entered as required by Rule 58(a). Indeed, such a judgment reflecting the adjudication of some claims or parties could not have been crafted because no claims *of parties* were adjudicated.

Of course, had the would-be plaintiffs filed a motion to intervene under Rule 24(b), as was originally counseled, the denial of their motion would be treated as a final judgment that is appealable. *See Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 377 (1987); 7C Wright, Miller & Kane, *Federal Practice & Procedure* § 1923 (2005 Supp.) ("Any denial of intervention should be regarded as an appealable final order"). The would-be plaintiffs now request that for purposes of assuring our jurisdiction, we take them as denied intervenors on the basis that their August 5, 2004 motion for reconsideration amounted in substance to a motion to intervene.

The requirements of Rule 24 serve several offices. Principally, the rule protects intervenors' interests by allowing them to join actions that potentially affect those interests. It also protects intervenors from the preference of existing parties that "others not be brought in," by assuring that intervenors have a full and fair chance to present the reasons they believe they should be permitted to intervene. *See* 7C Wright, Miller & Kane, *Federal Practice & Procedure* § 1901 (2005 Supp.). The rule also protects existing parties. It requires that the intervenor serve on the existing parties and the court not only its motion to intervene, giving the reasons therefor, but also a pleading "setting forth the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). Finally, in requiring intervenors to seek leave of court, the rule recognizes the role of the district court as the primary manager of a civil action once instituted.

We have recognized that in very limited circumstances an intervenor can be excused for failing to abide by the letter of Rule 24. In *Spring Construction Co. v. Harris*, 614 F.2d 374, 376-77 (4th Cir. 1980), the intervenor failed to file its own pleading *at the same time* that it filed its motion to intervene. Instead, the intervenor filed the pleading several days later. The district court excused the oversight and granted the motion to intervene, and we affirmed, concluding that "the proper approach is to disregard *non-prejudicial technical* defects" in Rule 24 procedure. *Id.* at 377 (emphasis added).

In this case, the departures from Rule 24 are more significant than those presented in *Spring Construction*, as might be expected, because the would-be plaintiffs deliberately chose not to file a motion to intervene. Yet as we read their motion for reconsideration, their departures may amount more to form than to substance. The would-be plaintiffs' motion for reconsideration, when understood as being filed by nonparties, essentially requests that they be made parties to the action. The motion was entitled: "Unnamed Plaintiffs' Motion To Reconsider Order of July 26, 2004 *Excluding Them from This Case*" (emphasis added). And in the body of their motion, even though they awkwardly blur their status, calling themselves "plaintiffs" and making no distinction between the plaintiffs as parties and themselves as nonparties, they do request that they be allowed to join the action as plaintiffs. They carried the denominational confusion even as they made their arguments. Complaining about the fairness of the district court's February 22, 2001 order, denying class certification, these would-be plaintiffs state, "[T]he Order is seriously unfair to the plaintiffs here [actually, would-be plaintiffs] who sought [actually, the *plaintiffs* sought] to add their names in the Third Amended Complaint." But in substance, they argue that they should be allowed to participate in the action as plaintiffs. The would-be plaintiffs note correctly that the plaintiffs were supportive of their request to become parties and therefore would not claim prejudice, and they argue that the defendants would not be prejudiced because the defendants knew the names of these would-be plaintiffs and some of the information about them through discovery. Moreover, the proposed third amended complaint, which accompanied the plaintiffs' earlier motion to amend to add the would-be plaintiffs, contained the actual allegations that the would-be plaintiffs would be making against the defendants in this case. The would-be plaintiffs thus have the benefit of the plaintiffs'

earlier motion to satisfy in substance the Rule 24(c) requirement that intervenors provide defendants with a copy of their proposed complaint.

In sum, while deliberately avoiding the mention of intervention in their motion for reconsideration, the would-be plaintiffs nonetheless did request intervention, and they appealed to this court as if they were denied intervenors. By seeking a Rule 54(b) order with respect to their request to be plaintiffs, the would-be plaintiffs argued that the denial of *their* proposed claims should be treated as judgments, much as would be their status as denied intervenors. Of course, if the would-be plaintiffs had actually filed a motion to intervene under Rule 24, they would have been quite comfortable in relying on the principle that denial of a motion to intervene is an appealable final order, without the necessity of seeking a Rule 54(b) certification. Likewise, in granting the Rule 54(b) motion, the district court unwittingly treated the would-be plaintiffs as nonparties seeking intervention — referring to them as "the putative plaintiffs."

Setting aside consideration of the unacceptable distorting and manipulating of judicial procedures that we have witnessed here so that we might reach the substance of the would-be plaintiffs' appeal, we will take their filings on their substance and accept them as denied intervenors. Apparently the district court supported this understanding when it signed, albeit erroneously, the proposed order granting Rule 54(b) certification. Moreover, in considering the would-be plaintiffs' appeal, we do not see any prejudice to the defendants.

Accordingly, we will treat, for purposes of this appeal, the would-be plaintiffs' motion for reconsideration to be a motion to intervene under Rule 24(b), and we review the district court's December 9, 2004 order denying that motion as a final appealable order. At the same time, we dismiss the appeals of the original plaintiffs from both orders as interlocutory and untimely, and as to the December 9, 2004 order, we dismiss their appeal for the additional reason that they lack standing to appeal the denial of a motion to which they were not a party. Finally, we dismiss the would-be plaintiffs' appeal of the district court's July 26, 2004 order for lack of standing and for untimeliness.

### III

In denying the 18 would-be plaintiffs permission to prosecute claims in this action, the district court concluded that the statute of limitations barred their claims. The court rejected the would-be plaintiffs' two arguments: (1) that their causes of action — as contained in plaintiffs' 2004 motion to amend and as adopted by them in their motion for reconsideration — should relate back to the filing of the original complaint in 1998 and (2) that the running of the statute of limitations was suspended during the period from when this action was commenced as a class action in 1998 and that suspension continued even beyond the district court's 2001 administrative order denying class certification.

We readily reject the would-be plaintiffs' first argument that their claims would, if included in an amended complaint, relate back to the date of filing of the original complaint. *First*, these would-be plaintiffs, as nonparties, could not have moved to amend the plaintiffs' complaint and get the benefit of any relation back, and they did not do so. *Second*, the plaintiffs, who alone have standing to appeal the motion to amend, are not before us on either the motion to amend the complaint or the motion for reconsideration, since their appeals were interlocutory and untimely. *Third*, if the would-be plaintiffs, with new causes of action, were to be added to the case, the statute of limitations would not, under Maryland law, relate back to the date that the existing plaintiffs filed their complaint. *See Grand-Pierre*, 627 A.2d 550. The cases cited by the would-be plaintiffs are inapposite, addressing different circumstances, such as where the amended complaint merely clarifies the existing complaint or where the amended complaint joins parties indispensable to resolution of the original complaint, such as through joint liability. *See, e.g.*, *Zappone v. Liberty Life Ins. Co.*, 706 A.2d 1060, 1072-73 (Md. 1998) (permitting relation back of amendment to substitute corporation for corporation's sole shareholder when amendment "refined and clarified the allegations of the initial complaint," which otherwise remained the same); *Crowe v. Houseworth*, 325 A.2d 592, 595 (Md. 1974) (permitting relation back of amendment to add plaintiffs who jointly owned rights with original plaintiffs when "neither the gravamen of the action nor the measure of damages [was] affected"). In this case, each of the original 18 plaintiffs has asserted a claim arising out of a police stop on Interstate

95 in which he or she was involved, and each of the would-be plaintiffs has proposed asserting a claim arising out of an entirely separate incident. Thus each plaintiff and would-be plaintiff has a separate claim that has its own statute of limitations, and none of the would-be plaintiffs' claims can be deemed filed as of the filing of the original complaint in April 1998. *See Grand-Pierre*, 627 A.2d at 553.

The would-be plaintiffs' second theory based on class action equitable tolling requires more discussion.

Actions brought under 42 U.S.C. § 1983 are governed by state statutes of limitations. 42 U.S.C. § 1988(a). Under Maryland law, which follows federal law as established in *American Pipe* and *Crown, Cork & Seal*, the filing of a class action suspends the running of the statute of limitations against class members' claims until the class action is denied. *See Christensen v. Philip Morris USA, Inc.*, 875 A.2d 823 (Md. Ct. Spec. App. 2005). Thus, the reasoning of *American Pipe* and *Crown, Cork & Seal* is applicable here.

In *American Pipe*, the Supreme Court confronted the dilemma that members of a proposed class are asked to rely on a class representative to protect their interests, yet at the same time they are encouraged to file their own actions or to intervene in the proposed class action to protect their claims in the event that the representative's proposed class action is denied. Balancing procedural interests with statute of limitations interests, the Court established a rule that the commencement of a class action equitably tolls the running of the statute of limitations for proposed class members' claims until the class action is denied. This rule discourages class members from intervening in the action until "after the Court has found the suit inappropriate for class action status," when no class member could any longer reasonably rely on the class representative. *American Pipe*, 414 U.S. at 553. The Court noted that the rule applied even to class members who were not aware of the class action proceedings. *Id.* at 552. Despite the breadth of the "reasonable class member" rationale, however, the Court held narrowly that the equitable tolling rule applied only to cases like that before it, in which class action certification is ultimately denied for lack of numerosity. *Id.* at 552-53.

Several years later, however, in *Crown, Cork & Seal Co.*, 462 U.S. 345, the Court fully conformed the *American Pipe* tolling rule to its

rational underpinnings. In *Crown, Cork & Seal*, the district court denied class certification for lack of numerosity, typicality, and representativeness. Consistent with the goal of *American Pipe* to protect class members' objectively reasonable reliance interests, the Supreme Court expanded the *American Pipe* rule's application and held that all class members' claims are tolled at the time the class action is filed, regardless of whether the members eventually intervened or filed new actions and *regardless of why* the district court denied certification. As the Court articulated the rule:

> We conclude, as did the Court in *American Pipe*, that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action.

*Id.* at 353-54 (citation omitted).

As we have noted, "[T]he *Crown, Cork & Seal* Court appears to have untethered this tolling rule from any necessary connection to the reasons for denying certification." *Smith v. Pennington*, 352 F.3d 884, 892 (4th Cir. 2003). In untethering the rule, the Supreme Court signaled that *American Pipe* tolling extends as far as is justified by the objectively reasonable reliance interests of the absent class members. If courts were to toll statutes of limitations only when class certification was denied for lack of numerosity, the rule, which would turn on the substantive reason for the denial, would not discourage premature intervention because class members could not know or predict at the time of filing why class certification might eventually be denied.

The *American Pipe/Crown, Cork & Seal* equitable tolling rule is a limited exception to the universal rule that statutes of limitations are impervious to equitable exceptions. *See Christensen*, 875 A.2d at 846 (quoting *Booth Glass Co. v. Huntingfield Corp.*, 500 A.2d 641, 645 (Md. 1985), for "the principle that where the legislature has not expressly provided for an exception in a statute of limitations, the

court will not allow any implied or equitable exception to be engrafted upon it"); *cf. Korwek v. Hunt*, 827 F.2d 874, 879 (2d Cir. 1987) ("*American Pipe* and *Crown, Cork* represent a careful balancing of the interests of plaintiffs, defendants, and the court system. Flexibility, notice, and efficiency are the watchwords of these opinions. We are confronted herein with a case which tests the outer limits of the *American Pipe* doctrine and which falls beyond its carefully crafted parameters into the range of abusive options"); *Crown, Cork & Seal*, 462 U.S. at 354 (Powell, J., concurring) ("The tolling rule of *American Pipe* is a generous one, inviting abuse"). Accordingly, although the Court in *Crown, Cork & Seal* "untethered" the *American Pipe* rule from the grounds for denying class action certification, the Court constrained the statute of limitations exception to the rationale of protecting the objectively reasonable reliance of absentee class members. Thus the Court in *Crown, Cork & Seal* adopted the bright-line rule that the statute of limitations "remains tolled for all members of the putative class *until class certification is denied*" for whatever reason. 462 U.S. at 354.

In this case, we conclude that no absentee class member could reasonably have relied on the named plaintiffs, nor the district court, to protect their interests in the period following the district court's 2001 certification denial — particularly in light of the events that followed — even though that certification denial was only for administrative purposes. If the denial order left doubts in the minds of reasonable absent class members whether they would be protected, then the acts that followed entry of that order surely put the issue to rest. The order itself stated that the class action would not be resurrected until the individual plaintiffs filed their reply requesting the court to consider the certification motion.

But as reasonably should have been expected, the likelihood of the plaintiffs filing such a reply quickly evaporated in the months that followed the district court's order. The individual plaintiffs actively pursued settlement negotiations for themselves, and they so advised absent class members. The plaintiffs have stated that the would-be plaintiffs in this case "attended the March 2002 meeting with the Court to discuss the proposed Consent Decree [at which they heard from the court and from counsel], and voted to approve the settlement." Of course, the settlement and consent decree involved only the

individual plaintiffs and the defendants, and it did not include absent class members. Such conduct by the representative parties was inconsistent with the case proceeding as a class action inasmuch as the representative parties originally alleged in their complaint that they represented absent class members for injunctive and declaratory relief. Yet they were settling those claims only on behalf of themselves. Thus, if the district court's denial of class certification did not adequately alert class members by its language alone, when coupled with the ensuing conduct of the litigation, it should have alerted absent class members that the district court's denial of the class action would not be resurrected at least with respect to a portion of the class members' claims. If they were inclined to preserve those claims, they would have had to file separate suits or a motion to intervene. These would-be plaintiffs were further notified about abandonment of the class action when the consent decree was approved and the district court was advised that all actions, including damages actions, would proceed as individual actions in June 2003.

These acts were foreseeable by the terms of the district court's order denying class certification because the denial, even if only administrative, relieved the district court of its obligation to determine class certification "at an early practicable time." Fed. R. Civ. P. 23(c)(1)(A). To avoid abuse and perpetual tolling, the *American Pipe* tolling rule must depend on district courts' fulfilling their obligations under Rule 23. Yet, because of the court's order in this case, the plaintiffs gained the power for themselves, to be exercised in their discretion, of determining when and whether class certification should be determined, thus removing from the court the responsibility that it otherwise had. The court's order did not state that the court would on its own reconsider the certification motion at a particular time; rather the court denied certification, stating it would decide the merits of certification *only if* the plaintiffs filed a reply.

The plaintiffs never filed a reply, and so the district court effectively relieved itself of its duty to determine the propriety of the class certification with its 2001 order.

If this 2001 administrative order was not the moment when the statute of limitations stopped tolling, then at *no moment* did it stop tolling, for there was no other order denying class certification. *See*

*Crown, Cork & Seal*, 462 U.S. at 353-54. The would-be plaintiffs' position essentially argues for some new rule to cut off tolling based on how their ambiguous filings might be construed. Not only would their position inordinately prejudice defendants by exposing them, potentially, to perpetual tolling, but it also demonstrates the patent unreasonability of relying on the class representative alone to pursue and protect the class members' interests after the court's 2001 order denying class certification.

The *American Pipe* rule provides a narrow exception to the fixed statutes of limitations, suspending their running from the date a class action is filed until the date it is denied, for whatever reason. By articulating such a rule, the Supreme Court remained highly sensitive to the need for certainty of a bright-line rule. Because statutes of limitations provide notice to all parties — to plaintiffs as to a clear date by which to commence an action and to defendants as to a date after which they can rely that stale claims cannot be presented — *American Pipe* cannot be understood to authorize ignoring a district court's administrative order denying class certification in favor of relying on plaintiffs' conduct abandoning all or part of a class action or simply manifesting a loss of interest through inaction.

Thus, even though the district court intended its order denying class certification to be a case management device, the order was notice to objectively reasonable putative class members to seek clarification or to take action. For when the district court's administrative denial defers to the representative parties who can progressively abandon the class, the necessary clarity of a statute of limitations is destroyed, contrary to the clear intent of *American Pipe* and *Crown, Cork & Seal*, without furthering the purpose of protecting reasonable reliance by absent putative class members.

The would-be plaintiffs' equities are not seriously tested by this application of the *American Pipe* rule. First, after the court issued its 2001 order denying the class action administratively and giving exclusive control to the representative parties, the absent class members could no longer have reasonably relied *on the court* to protect their interests under Rule 23. And only a year later, they could not have reasonably relied on the *representative parties* to protect their interests because the representative parties told the absent class mem-

bers that the parties were pursuing relief on their own. By February 2003, when the settlement agreement was reached, abandonment of the class became a certainty. Yet not until the spring of 2004 did any of the absent class members act, and then with full consciousness that the statute of limitations was an existing defense. Thus, instead of filing a separate action or a motion to intervene in this action, they sought to have the complaint amended in an effort to circumvent the defenses that stared them in the face.

On the other hand, the defendants would now — eight years after the commencement of this action — be called upon to defend entirely new claims involving new and different traffic stops on I-95 during the period from April 1995 to April 1998, many involving officers still unknown to both the defendants and would-be plaintiffs. In these circumstances, the defendants' interest in putting to rest stale claims outweighs the would-be plaintiffs' interest in beginning anew so many years later.

Accordingly, we hold that the statute of limitations in this case resumed running on February 22, 2001, as the district court correctly held. Because the would-be plaintiffs' claims expired before August 2004 when they filed their motion for reconsideration — which we have treated as a motion to intervene under Rule 24(b) — the district court did not abuse its discretion in refusing to grant the motion.

In sum, we dismiss all appeals taken from the district court's July 26, 2004 order and the plaintiffs' appeal taken from the district court's December 9, 2004 order. We also dismiss the appeal taken pursuant to the district court's Rule 54(b) order entered on May 25, 2005. On the would-be plaintiffs' appeal from the district court's December 9, 2004 order, we affirm.

*AFFIRMED IN PART; DISMISSED IN PART*