*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 12a0281p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

ROBERT H. FALLIN; CHARLES JOHNSON;
CLAUDETTE LOGSDON; JOSEPH G.
RUSSELBURG; CLARENCE E. SIMON, JR.;
WILLIAM M. GILMORE; ERIC CLARK; STEVE J.
SMITH; DONALD CORLEY,
            *Plaintiffs-Appellants*,

            *v.*

COMMONWEALTH INDUSTRIES, INC. CASH
BALANCE PLAN; BENEFITS COMMITTEE FOR
THE COMMONWEALTH INDUSTRIES, INC.
CASH BALANCE PLAN,
            *Defendants-Appellees*,

COMMONWEALTH INDUSTRIES, INC.,
            *Defendant*.

No. 09-5139

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 3:07-CV-196—John G. Heyburn, District Judge.

Argued: May 30, 2012

Decided and Filed:  August 23, 2012

Before:  SILER and KETHLEDGE, Circuit Judges; GRAHAM, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Michael D. Grabhorn, GRABHORN LAW OFFICE, PLLC, Louisville, Kentucky, for Appellants.  Keith Louis Pryatel, KASTNER, WESTMAN & WILKINS, LLC, Akron, Ohio, for Appellees **ON BRIEF:** Michael D. Grabhorn, GRABHORN LAW OFFICE, PLLC, Louisville, Kentucky, for Appellants.   Keith Louis Pryatel, Kenneth Michael Haneline, KASTNER, WESTMAN & WILKINS, LLC, Akron, Ohio, for Appellees.

_____

[*]The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

---

**OPINION**

---

KETHLEDGE, Circuit Judge. Plaintiffs are retirees who received benefits under Commonwealth Industries' pension plan. They allege that the Plan underpaid them, in violation of the Employee Retirement Income Security Act, when it did not include a subsidy for early retirement in its benefit calculations. In separate orders, the district court first dismissed the claims of all but one plaintiff on limitations grounds, and later granted summary judgment to the defendants on the claims of the remaining plaintiff, Donald Corley. We affirm the first order and vacate the second.

I.

Until 1998, Commonwealth had a traditional defined-benefit pension plan. The Plan allowed employees to retire early once they had completed five years of service and reached age 55. Employees taking that option would receive subsidized benefits: monthly payments beginning immediately that were nearly as large as (and, in the case of those age 62–65, the same as) those they would have received if they were 65.

By 1998, all nine plaintiffs had performed five years of service, but none had reached age 55. That year, Commonwealth converted its plan into a cash-balance plan, which replaced defined-pension benefits with hypothetical individual accounts. The initial balance of each account was the value of the benefits the participant had accrued. Plaintiffs allege, however, that the Plan failed to give them the full value of their accrued benefits. Specifically, they say the Plan did not give them credit for the value of the pre-amendment early-retirement subsidy, which they allege was more generous than the one that replaced it.

After the conversion, Plaintiffs retired, electing to take their benefits in the form of single lump-sum payments. Plaintiff Corley received his payment on March 1, 2002, when he was age 55. Less than five years later, Corley filed an administrative claim to challenge the amount of the payment. The other eight plaintiffs each filed similar claims

more than five years after receipt of their payments. Plaintiffs lost their administrative appeals and sued under 29 U.S.C. § 1132(a)(1)(B), alleging that ERISA's terms, which the Plan incorporated, entitled them to additional benefits.

The district court dismissed eight of the plaintiffs' claims, finding them time-barred. It found Corley's claim timely, but rejected the claim on the merits. The court reasoned that, as of 1998, Corley was not yet entitled to his early-retirement subsidy because he was then not yet 55. Thus, the court held, the early-retirement benefit had not accrued yet, and the Plan amendment did not reduce any accrued benefit.

## II.

## A.

Plaintiffs argue that the district court erred in holding that the statute of limitations barred the claims of eight plaintiffs under § 1132(a)(1)(B). In doing so, the court applied what it thought was "the most analogous state law statute of limitations." *Redmon v. Sud-Chemie Inc. Retirement Plan for Union Employees*, 547 F.3d 531, 534 (6th Cir. 2008) (internal quotation marks and citations omitted). We review its decision de novo. *Id.*

The district court held that the closest analog here was Kentucky Revised Statutes § 413.120(2), which provides a five-year limitations period for "[a]n action upon a liability created by statute, when no other time is fixed by the statute creating the liability." Thus, in order to be timely, Plaintiffs' causes of actions must have accrued within five years of when they filed suit (unless they were entitled to tolling). An ERISA cause of action accrues "when a fiduciary gives a claimant clear and unequivocal repudiation of benefits." *Redmon*, 547 F.3d at 538 (internal quotation marks omitted). The district court held that the Plan's payment of a single lump sum represented the Plan's determination of all the benefits that each plaintiff was entitled to receive, and thus unequivocally repudiated any claim to additional benefits. Those payments occurred more than five years before eight of the plaintiffs began the administrative process, so the district court held that their claims were time-barred.

In *Redmon*, our court expressly adopted the reasoning and holding of the district court in this very case. *See* 547 F.3d at 536–38. And the claims here are indistinguishable from those in *Redmon*. There, we held that, when a plaintiff seeks "benefits under the plan" and those claims depend on "alleged violations of ERISA's statutory protections," Kentucky's five-year limitations period applies. *Id.* at 537. Under *Redmon*, therefore, the district court was correct to hold that the claims of eight plaintiffs were time-barred.

### B.

The district court also held that the claim of the remaining plaintiff, Corley, was timely. The court reasoned that the claim was equitably tolled while he pursued administrative remedies. Corley received his lump-sum payment roughly five years and one month before he filed suit, but he spent more than two months of that time pursuing administrative remedies. The district court held that Kentucky would permit tolling while a plaintiff exhausts his administrative remedies, so long as he begins the administrative process within the statute of limitations. In *Redmon*, our court endorsed this aspect of the district court's holding. *Id.* at 539 n.9. We do so again here. Common sense suggests that we should encourage plaintiffs to pursue their administrative remedies before coming to court with the dispute—and indeed we sometimes require them to do so. *See, e.g.*, *Hill v. Blue Cross and Blue Shield of Mich.*, 409 F.3d 710, 717 (6th Cir. 2005). Moreover, Kentucky courts routinely allow tolling while plaintiffs exhaust their administrative remedies. *See*, *e.g.*, *Tyler v. Taylor*, 128 S.W.3d 495, 497 (Ky. Ct. App. 2004) (limitations period tolled while inmate pursues grievance procedures). The district court was therefore correct to hold that Corley's claim was not time-barred.

III.

A.

Turning to the merits, Corley argues that the current Plan language, independent of any ERISA requirements, entitles him to the value of his pre-amendment early-retirement subsidy. The Plan provides a default early-retirement benefit equal to "the amount of the Normal Retirement Benefit . . . reduced by 5/12 of 1% for each month" that the participant is younger than 62. The benefit cannot "be less than the Actuarial Equivalent of the Participant's Accrued Benefit." The Plan defines "Accrued Benefit" as "[t]he benefit to which the Participant would be entitled under the Normal Form commencing at age 65 and computed under the provisions of Section 4.1[,]" which defines the Normal Retirement Benefit. Corley interprets these provisions to mean that the Plan was required to pay him the value of the pre-amendment early-retirement subsidy.

Here, the Benefits Committee has discretion in interpreting the Plan. Thus, we will overturn the Committee's interpretation only if it is arbitrary or capricious. *See Price v. Bd. of Trs. of the Ind. Laborer's Pension Fund*, 632 F.3d 288, 295–96 (6th Cir. 2011). The Committee interpreted the Plan's early-retirement provisions to mean that a participant would get early-retirement benefits calculated according to the default formula, unless the default provided less than an actuarial equivalent of the benefits he would get if he waited until normal retirement age. This interpretation flows naturally when one reads the provisions together. Moreover, the Treasury Department has promulgated a regulation that leads to the same conclusion. *See* 26 C.F.R. § 1.411(a)-11(a)(2). It gives plans two options: If a plan specifically provides that the lump-sum payment "is the present value of the subsidized early retirement annuity benefit[,]" then the plan must include the value of the early-retirement subsidy in the payment. *Id.* But if a plan instead defines the early-retirement benefit as "the present value of the normal retirement annuity benefit"—which is what this plan does—then it need not include the subsidy. *Id.* The Benefits Committee's interpretation comported with this regulation

and was not arbitrary or capricious. *See generally Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 983 (6th Cir. 2000).

B.

Corley also argues that the Committee's calculation of his lump-sum payment violated an ERISA provision known as the anti-cutback rule. With exceptions not applicable here, that rule provides that a plan amendment shall not decrease a participant's "accrued benefit." 29 U.S.C. § 1054(g). Corley contends that the Committee paid him an early-retirement benefit that was less than he would have received under the pre-amendment Plan, thereby reducing his accrued benefit. The district court disagreed. We review its reading of § 1054(g) de novo. *See Daft v. Advest, Inc.*, 658 F.3d 583, 594–95 (6th Cir. 2011).

The district court reasoned that a benefit accrues only after a participant has met all of the plan's criteria for that benefit. *See* 29 U.S.C. § 1002(23)(A); *Cattin v. General Motors Corp.*, 955 F.2d 416, 423 (6th Cir. 1992). Here, before the Plan amendment, Corley satisfied one criterion for the early-retirement benefit—that he have five years of credited service. But he did not meet the other—that he reach age 55—until after the amendment (although he did satisfy this condition before he retired). He argues that his early-retirement benefit was accrued nonetheless under § 1054(g).

That subsection provides:

(g) Decrease of accrued benefits through amendment of plan

> (1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in section 1082(d)(2) or 1441 of this title.

> (2) For purposes of paragraph (1), a plan amendment which has the effect of—

>> (A) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or

>> (B) eliminating an optional form of benefit,

> with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits. In the

> case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a participant who satisfies (either before *or after the amendment*) the preamendment conditions for the subsidy.

29 U.S.C. § 1054(g) (emphasis added).

Here, Corley had more than five years of service before the Plan was amended in 1998. The subsidy he seeks was therefore "attributable to" his "service before the amendment." *Id.* § 1054(g)(2); *compare Cattin*, 955 F.2d at 423–24 (anti-cutback rule did not apply where plaintiffs sought benefits attributable in part to service after the plan amendment). And though Corley had not satisfied the age requirement by that time, the statute allows him to do so "either before or after the amendment[.]" 29 U.S.C. § 1054(g)(2). Thus, in summary, early-retirement "benefits attributable to pre-[amendment] service remain inviolate whether the age condition be satisfied 'before or after the amendment[.]'" *Rybarczyk*, 235 F.3d at 983 (ellipses omitted).

*Rybarczyk* controls here. That Corley satisfied the service condition before the plan was amended, and the age condition afterward, was enough for his subsidy to be accrued. Under the anti-cutback rule, therefore, the Plan could not reduce that benefit.

As a factual matter, however, it is not clear that the Plan actually reduced Corley's benefits. Neither party has explained to us the calculations the Plan was supposed to perform or those it did perform. Indeed, in rejecting Plaintiffs' administrative claims, the Benefits Committee told Plaintiffs that they did not "provide sufficient detail for the Benefits Committee to fully understand their assertion that the early retirement factors are incorrect."

On remand, the district court should consider whether the benefits payable to Corley under the relevant versions of the Plan constituted "an early retirement benefit" or "a retirement-type subsidy" which would be protected from elimination or reduction, or "an optional form of benefit" which would only be protected from elimination. *See* 29 U.S.C. § 1054(g)(2)(A), (B). To the extent that Corley may be seeking separately calculated benefits under former versions of the Plan in addition to the benefits payable

under the Plan in effect at the time of his retirement, the district court should be mindful of the risk of double counting his early-retirement benefits.

\*    \*    \*

We affirm the district court's November 9, 2007 order dismissing the claims of all plaintiffs but Corley.  We vacate the court's December 2, 2008 order regarding Corley's claim, and remand the case for further proceedings consistent with this opinion.