*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0149p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

In re: VERTRUE INC. MARKETING AND SALES
PRACTICES LITIGATION

_____

VERTRUE PLAINTIFFS,

         *Plaintiffs-Appellees*,

    *v.*

VERTRUE, INC., fka Memberworks, Inc.;
ADAPTIVE MARKETING, LLC,

        *Defendants-Appellants*.

No. 10-3928

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
Nos. 1:09-vm-75000–75013—Patricia A. Gaughan, District Judge.

Argued: November 17, 2011

Decided and Filed:  April 16, 2013[*]

Before:  KENNEDY[**], GIBBONS, and KETHLEDGE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Darrel J. Hieber, SKADDEN ARPS SLATE MEAGHER & FLOM LLP, Los Angeles, California, for Appellants.  Eric Alan Isaacson, ROBBINS GELLER RUDMAN & DOWD LLP, San Diego, California, for Appellees.  **ON BRIEF:** Darrel J. Hieber, J. Russell Jackson, SKADDEN ARPS SLATE MEAGHER & FLOM LLP, Los Angeles, California, Robert N. Rapp, CALFEE HALTER & GRISWOLD LLP, Cleveland, Ohio, for Appellants.  Eric Alan Isaacson, Frank J. Janecek, Jr., Amanda M. Frame, ROBBINS GELLER RUDMAN & DOWD LLP, San Diego, California, Jack

---

[*] This decision was originally issued as an "unpublished decision" filed on April 16, 2013.  The court has now designated the opinion as one recommended for full-text publication.

[**] This decision is filed by a quorum of the panel pursuant to 28 U.S.C. § 46(d).  *See Lewis v. Caterpillar, Inc.*, 156 F.3d 1230, 1998 WL 416022 (6th Cir. 1998); *Cambio Health Solutions, LLC v. Reardon*, 234 F. App'x 331, 2007 WL 627834 (6th Cir. 2007).  Judge Kennedy participated in oral argument in this case but did not participate in this decision due to her retirement.

Landskroner, LANDSKRONER GRIECO MADDEN, LLC, Cleveland, Ohio, for Appellees.

————————————

**OPINION**

————————————

JULIA SMITH GIBBONS, Circuit Judge. This matter arises from a multidistrict litigation proceeding, encompassing thirteen putative class action suits challenging the sales and marketing practices of Vertrue, Inc. and Adaptive Marketing, LLC. On April 16, 2010, the district court entered an amended Memorandum of Opinion and Order, granting in part and denying in part the defendants' motion to dismiss. The district court dismissed the plaintiffs' claims for negligent representation and for money had and received, all claims asserted under state law consumer protection statutes, all RICO claims, and all claims for which fraudulent concealment tolling is required. It allowed the remaining claims to proceed. The district court denied the defendants' motion to strike the class allegations.

On November 17, 2011, we heard oral argument in this appeal. After argument, the appeal was held in abeyance based on the bankruptcy petitions of the defendants-appellants. In a status report dated January 3, 2013, the parties advised that they stipulated to "lift the bankruptcy stay for the limited purpose of allowing this appeal to proceed." The bankruptcy judge approved the stipulation on November 27, 2012. In this posture, we affirm the decision of the district court.

**I.**

Vertrue, operating as MemberWorks, Inc. ("MWI"), sells membership programs allowing customers to benefit from discounts on a number of products and services. In their consolidated complaint, the plaintiff-purchasers allege that Vertrue and the other defendants made unlawful charges to customers' accounts, luring them into the membership programs through television advertisement and sale of a so-called "bait" product. When interested customers called the company to purchase the bait product,

the company recorded their credit or debit card information and read them a script about the membership program. The complaint alleges that the script deceived customers by indicating that "free" materials would be sent to them in the mail. Vertrue would then mail a membership card and place a recurring annual charge of $60-$170 on the customer's credit card, which would only be removed if the customer called to cancel his membership.

Affected purchasers filed thirteen cases in various jurisdictions challenging this practice. The cases were consolidated in the Northern District of Ohio, and the plaintiff-purchasers filed a consolidated amended complaint, alleging that Vertrue's scheme violates the Electronic Funds Transfer Act ("EFTA"), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and state consumer protection statutes. The plaintiffs also assert claims for conversion, unjust enrichment, fraud, negligent misrepresentation, and "money had & received." Vertrue filed a Motion to Dismiss and Strike Claims and Class Allegations Under the Statute of Limitations. On April 16, 2010, the district court entered an amended Memorandum of Opinion and Order, granting in part and denying in part the defendants' motion to dismiss. The district court dismissed the plaintiffs' claims for negligent representation and for money had and received, all claims asserted under state law consumer protection statutes, all RICO claims, and all claims for which fraudulent concealment tolling is required. It allowed the remaining claims to proceed, holding that they were properly tolled. The district court denied the defendants' motion to strike the class allegations. Vertrue appeals the district court's conclusion that the remaining claims were timely filed.

## II.

The success or failure of the plaintiffs' case at this stage depends on whether they are entitled to tolling during the pendency of a prior putative class action suit. Therefore, some discussion of that prior litigation is required. On March 28, 2002, a plaintiff filed a lawsuit in the Southern District of California, captioned *Sanford v. West*, seeking to represent a national class of purchasers who had been enrolled in the MWI membership program. In response to a motion by the defendants, the district court

compelled arbitration. The arbitrator, interpreting the district court's order not to include the arbitrator's consideration of the issue of class certification, issued an arbitration award. The district court confirmed that award and denied the plaintiffs' motion to reconsider. The plaintiffs then sought class certification, which the district court denied on the basis that the individual claims had already been compelled to arbitration and the class claims were moot. On appeal, the Ninth Circuit vacated the district court's order compelling arbitration and therefore noted that the class allegations were no longer moot. On remand, the trial court dismissed the plaintiffs' federal claim for the wrongful mailing of unordered merchandise and concluded that the named plaintiffs lacked standing to assert their claim for violation of the EFTA. *Sanford v. MemberWorks, Inc.*, No. 02CV0601, 2008 WL 4482159, at *6 (S.D. Cal. Sept. 30, 2008). The court declined to exercise supplemental jurisdiction over the remaining state law claims. *Id.* Therefore, because all of the plaintiffs' claims were dismissed, the district court dismissed the action in its entirety without ruling on the motion for class certification. *Id.* The plaintiffs filed a motion to amend their complaint to include a proposed RICO claim, which the district court ultimately denied as futile. *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 555 (9th Cir. 2010).

Subsequently the cases composing this multidistrict litigation were filed. As described by the district court:

> On January 15, 2009, the Smiths, named class representatives in *Sanford*, refiled the dismissed state law claims in Ohio state court. [Waslin], a proposed class representative in *Sanford*, refiled the dismissed EFTA claim. The remaining actions were filed by previously unnamed class members in *Sanford*. Upon transfer by the MDL Panel, plaintiffs filed an 11 count consolidated amended complaint. Count one is a claim for violation of the EFTA. Counts two through five allege violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Count six alleges violation of the states' consumer protection statutes. Counts seven and eight allege conversion and unjust enrichment, respectively. Count nine is a claim for fraud. Count ten is a claim for negligent misrepresentation and count eleven alleges "money had & received."

*In re Vertrue Mktg. and Sales Practices Litig.*, 712 F. Supp. 2d 703, 710 (N.D. Ohio 2010). The defendants moved to dismiss the complaint as untimely. The district court

granted in part and denied in part the defendants' motion, dismissing all claims for negligent misrepresentation, money had and received, and all claims asserted under state law consumer protection statutes, all RICO claims, and all claims for which fraudulent concealment tolling is required. *Id.* at 726. All other claims remained pending. Vertrue sought certification of the order for interlocutory appeal, which the district court granted. This timely appeal followed.

## III.

We review the district court's ruling on a motion to dismiss on statute of limitations grounds *de novo*. *Fallin v. Commonwealth Indus., Inc.*, 695 F.3d 512, 515 (6th Cir. 2012). The parties agree on the appropriate limitations period for each of the plaintiffs' claims—their disagreement lies only in whether the plaintiffs are entitled to benefit from tolling of that period. We now affirm the district court's decision that they are. The district court held that the purchasers' federal claims were tolled under the doctrine established by the Supreme Court in *American Pipe* and that their state law claims were tolled pursuant to 28 U.S.C. § 1367(d). We discuss each doctrine in turn.

## A.

Regarding the purchasers' federal claims, the Supreme Court has held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974) (footnote omitted). Although that case addressed intervention motions, the Supreme Court subsequently extended the doctrine, holding that "all members of the putative class [may] file individual actions in the event that class certification is denied, provided . . . that those actions are instituted within the time that remains on the limitations period." *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 346–47 (1983). As expressed in that case, *American Pipe* tolling extends to all putative class members, whether seeking to intervene or to initiate their own suit, in order to give full effect to the efficiency and economy goals of class action procedure. Without such protection,

putative class members would have an incentive to file unnecessary individual lawsuits to protect their rights in the event of denial of class certification. *Id.* at 349–51.

Against this backdrop we decided *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988). The district court provided a thoughtful discussion of *Andrews* and its context which we need not recite here. Rather, we note only the most relevant elements of that history for our purpose. Prior to *Andrews*, federal employees filed an employment discrimination case pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1982). The plaintiffs were black, civilian employees of the Air Force Logistics Command who alleged that they were denied promotions on the basis of their race because the promotion examination had a disparate impact upon blacks. *Andrews*, 851 F.2d at 147–48. A putative class action claim was commenced in the district court, and on March 15, 1983, the district court denied class certification. On April 18, 1983, the plaintiff in the initial suit filed a second motion for class certification. *Id.* at 148. Before the court could rule on that motion, the plaintiff settled her individual claim on July 12, 1983, and the suit was dismissed with prejudice. *Id.* Between July 26 and July 28, the *Andrews* putative class members individually initiated the Title VII administrative process by contacting their EEO counselor. Ultimately, they filed the *Andrews* case, asserting both individual and class claims. *Id.* The defendants argued, and the district court agreed, that there was no tolling under *American Pipe* for future class actions by putative class members. *Id.* We approved the district court's reasoning as to *American Pipe* tolling for the class claims and affirmed their dismissal. *Id.* We noted that:

> We also agree with the district court's conclusions concerning the plaintiffs' attempt to gain classwide relief. The courts of appeals that have dealt with the issue appear to be in unanimous agreement that the pendency of a previously filed class action does not toll the limitations period for additional class actions by putative members of the original asserted class.

*Id.* at 149. Nevertheless, we reversed the district court's dismissal of the plaintiffs' individual claims. While we agreed with the district court that *American Pipe* tolling protected these claims only until the point of denial of class certification, *id.* at 148, we

also noted that general principles of equitable tolling applied after that point to preserve the claims. The application of equitable tolling was based on the plaintiffs' lack of knowledge about the settlement of the prior case until after July 19, 1983, the plaintiffs' diligence after that date, and absence of prejudice to the defendant.

Vertrue argues that *Andrews* stands for the bright line rule that *American Pipe* tolling never applies to subsequent class actions by putative class members and that, therefore, the plaintiffs here are time-barred from seeking to pursue a subsequent class action. However, we dealt in *Andrews* with a situation in which class certification had already been denied. Here, no court has definitively ruled on class certification, as the district court dismissed the plaintiffs' actions in *Sanford* before ruling on the plaintiffs' motion for class certification. *Sanford*, 2008 WL 4482159, at *6.[1] Because the risk motivating our decision in *Andrews*—namely, repetitive and indefinite class action lawsuits addressing the same claims—is simply not present here, we hold that the commencement of the original *Sanford* class action tolled the statute of limitations under *American Pipe*.[2] The parties agree that if *American Pipe* tolling is allowed in this case,

---

[1] On November 29, 2000, a group of plaintiffs filed a class action complaint in Ohio state court, captioned *Ritt v. Billy Blanks Enterprises*, which was later removed to federal court. In that case, the plaintiffs purchased Tae-Bo videotapes from MWI after viewing an advertisement on television. MWI then allegedly placed charges on purchasers' credit cards for "memberships." The complaint in *Ritt* includes language and allegations specific to the Tae-Bo product. It sought certification of a nationwide class of those individuals "who were charged unauthorized fees (or similar unauthorized charges) on their credit card or debit card accounts in connection with enrollment in an MWI membership program." *In re Vertrue*, 712 F. Supp. 2d at 708. After an appeal, the district court ultimately certified a class of plaintiffs described as "residents of Ohio who . . . called a toll free number marketed by [defendants] and purchased any Tae-Bo product, and subsequently [incurred unauthorized charges]." *Id.* One of the defendants entered into a settlement with the plaintiffs and, as a result, the claims against MWI were dismissed. The final judgment in the case was entered on December 11, 2008.

As noted by the district court, the denial of class certification in *Ritt* is irrelevant to resolution of the issues presented in this appeal and does not provide a date from which the statute of limitations began to run. *Ritt* involved only that class of plaintiffs that purchased Tae-Bo products, none of which were produced or sold by the defendants in this case. Purchasers of Tae-Bo products are specifically excluded from this lawsuit. The parties in this case, none of whom were named parties in *Ritt*, are not precluded from litigating the class issue because unnamed class members are not parties to a putative class action and are not bound by that adverse certification decision. *See Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2379–80 & n.10 (2011).

[2] Other courts have followed this same approach when faced with a situation in which a previous court has not made a determination as to the "validity of the class." *See Yang v. Odom*, 392 F.3d 97, 104, 112 (3d Cir. 2004) (holding that tolling applies to a subsequent class action when the prior denial of class certification was "based solely on Rule 23 deficiencies of the putative representative"); *Catholic Social Servs., Inc. v. I.N.S.*, 232 F.3d 1139, 1149 (9th Cir. 2000) (en banc) (holding that tolling applies to a subsequent class action when class certification was granted in a prior case); *cf. Great Plains Trust Co. v. Union Pacific R.R. Co.*, 492 F.3d 986, 997 (8th Cir. 2007) (assuming without deciding that *American Pipe* analysis applies in cases where one putative class action suit was dismissed without prejudice and

the plaintiffs' federal claims were timely filed. Because no court ever denied the motion for class certification in the *Sanford* action, we affirm the district court's conclusion that the plaintiffs' federal claims were timely filed.

Vertrue argues that the plaintiffs forfeited their opportunity to rely on *American Pipe* tolling by filing a new action before receiving a determination on the class certification issue in the prior action. This argument is grounded in our decision in *Wyser-Pratte Management Company v. Telxon Corporation*, 413 F.3d 553 (6th Cir. 2005), in which we held that "a plaintiff who chooses to file an independent action without waiting for a determination on the class certification issue may not rely on the *American Pipe* tolling doctrine." *Id.* at 568–69. However, *Wyser-Pratte* involved a putative class member who initiated a lawsuit four months before a lead plaintiff's motion for certification was granted. *Id.* at 559. There, we credited the concern that courts would be burdened by multiple lawsuits, noting that "[t]he purposes of *American Pipe* tolling are not furthered when plaintiffs file independent actions before decision on the issue of class certification, but are when plaintiffs delay until the certification issue has been decided." *Id.* at 569. Here, the district court's dismissal of the *Sanford* action, although not a determination of the certification issue, foreclosed the possibility that any decision on the certification issue would be forthcoming. Therefore, the plaintiffs in this action satisfied the dictates of *Wyser-Pratte* by waiting to file their new action until the district court had confirmed that it would not address the class certification issue.

**B.**

The district court held that the state law claims alleged in the *Sanford* action were tolled by operation of 28 U.S.C. § 1367(d). That section provides that "[t]he period of limitations for any [related state law] claim asserted [] . . . shall be tolled while the claim

---

one was voluntarily dismissed). Even those circuits that apply a categorical ban against tolling for the benefit of subsequent class actions have addressed situations in which class certification has been affirmatively denied. *See Griffin v. Singletary*, 17 F.3d 356, 359 (11th Cir. 1994) (holding that no subsequent class actions may benefit from tolling when class certification has been denied); *Salazar-Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334, 1349–50 (5th Cir. 1985); *Basch v. Ground Round, Inc.*, 139 F.3d 6, 7, 11 (1st Cir. 1998); *Korwek v. Hunt*, 827 F.2d 874, 878 (2d Cir. 1987).

is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d). The district court properly noted that application of this provision to unnamed plaintiffs is a question of first impression in our circuit. The district court explained:

> There are three possible interpretations of this statute. *See, Turner v. Kight*, 406 Md. 167, 957 A.2d 984 (2008); *Goodman v. Best Buy*, 755 N.W.2d 354 (Minn. Ct. App. 2008). As set forth in *Turner* and *Goodman*, the statute could arguably be interpreted as "annulling" the state statute of limitations. In this manner, the state statute of limitations period is completely replaced "by a fixed period: the thirty-day period after federal dismissal." This interpretation is known as the "substitution approach." The second, and related interpretation, is that Section 1367(d) only tolls the expiration of the statute of limitations,
>
> > This interpretation treats that period in the statute—the federal claim period plus thirty days—as a single span of time. If the state limitations period runs out during that span, the thirtieth day after dismissal becomes the new filing deadline. Under these circumstances, the outcome is the same as under the 'annul and replace' interpretations. If, however, the state limitations period does not run out during that span of time, the state limitations period is unaffected and terminates without regard to any federal court filings.
>
> *Goodman*, 755 N.W.2d at 357. The second interpretation is known as the "extension approach." The third possible interpretation is that Section 1367(d) suspends the running of the statute of limitations, i.e., "the clock is stopped and the time is not counted—while the federal court is considering the claim and for thirty days after the claim is dismissed." *Id.* This is referred to as the "suspension approach."

*In re Vertrue*, 712 F. Supp.2d at 722–23. The district court adopted the "suspension approach," reasoning that it gives effect to both the text of § 1367(d) and state law statutes of limitations. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) ("It is our duty to give effect, if possible, to every clause and word of a statute." (internal quotation marks omitted)). The substitution approach fails to give effect to state statutes of limitations and the extension approach fails to give any operative effect to § 1367(d) in a number of cases in which the state statute of limitations does not expire during the

course of federal litigation.  We are persuaded that the suspension approach properly gives effect to both § 1367(d) and the state statute of limitations.  Having concluded that we calculate the  running of the statute of limitations pursuant to the suspension approach, we affirm the district court's conclusion that all of the plaintiffs' state law claims except those requiring fraudulent concealment tolling were timely filed.

Vertrue argues that the plaintiffs in this case were not parties in the *Sanford* litigation and therefore do not have "claims" which can be tolled pursuant to 28 U.S.C. § 1367(d).  However, the Supreme Court has consistently referred to the "claims" of unnamed plaintiffs in class action lawsuits.  In *Crown*, the Court noted that "a class member would be unable to 'press his *claim* separately' if the limitations period had expired while the class action was pending." *Crown*, 462 U.S. at 351 (1983) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974) (emphasis added)).  In explaining *American Pipe* tolling, the Court has noted that putative class members had "claims" they would want to preserve. *See Devlin v. Scardelletti*, 536 U.S. 1, 10 (2002). These cases demonstrate that even putative class members have "claims" for purposes of 28 U.S.C. § 1367(d).  Vertrue has failed to explain how the efficiencies sought by *American Pipe* tolling would be advanced if putative class members were forced to file individual state law actions to preserve any state law claims whose statutes of limitations might run during the course of class proceedings.  Because we find no indication that Congress intended to exclude putative class members from the tolling available through operation of  § 1367(d), we hold that the plaintiffs here properly articulated state law "claims" for purposes of § 1367(d).

**IV.**

For the foregoing reasons, we affirm the decision of the district court.