RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0183p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

SHARON POTTER (20-5550); BRANDI JANE ADAMS (20-5551); JOHNNY MESSER (20-5552),

       *Plaintiffs-Appellants*,

  *v.*

COMMISSIONER OF SOCIAL SECURITY,

       *Defendant-Appellee*.

Nos. 20-5550/5551/5552

─────────────────

Appeals from the United States District Court for the Eastern District of Kentucky at Pikeville;
Nos. 7:19-cv-00072 (Potter) and 7:19-cv-00093 (Messer)—Danny C. Reeves, District Judge;
No. 7:17-cv-00085 (Adams)—Gregory F. Van Tatenhove, District Judge.

Argued:  January 28, 2021

Decided and Filed:  August 16, 2021

Before:  COOK, GRIFFIN, and LARSEN, Circuit Judges.

─────────────────

#### COUNSEL

**ARGUED:**  Emma Simson, WILMER CUTLER PICKERING HALE AND DORR LLP, Washington, D.C., for Appellants.  Jaynie Lilley, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:**  Emma Simson, Daniel S. Volchok, Arpit K. Garg, WILMER CUTLER PICKERING HALE AND DORR LLP, Washington, D.C., Evan B. Smith, APPALRED LEGAL AID, Prestonsburg, Kentucky, Richard Frank Dawahare, Lexington, Kentucky, for Appellants.  Jaynie Lilley, Charles Scarborough, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

**OPINION**

_____

GRIFFIN, Circuit Judge.

Class actions encourage absent members to rely on representatives to vindicate their rights.  If, however, the court decides that a lawsuit should not proceed as a class action (or at all), class members are on their own.  Consistent with the representative nature of class litigation, the Supreme Court has established *American Pipe* tolling, an equitable doctrine under which filing a class action pauses the deadlines for members to file related individual actions.  *See American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974).  The reason for this doctrine is simple:  Once a class action is filed, putative class members pursue their rights through that vehicle and defendants know of the claims against them, so there is no need to clutter the courts with repetitive actions.

Traditionally, *American Pipe* tolling continues until the district court decides that the lawsuit should not proceed as a class action and denies class certification on the merits.  These consolidated cases (*Potter*, *Adams*, and *Messer*) present two significant questions about what else ends *American Pipe* tolling.  First, we must decide whether tolling continues after a district court denies a motion for class certification solely as a matter of docket management, without deciding that certification is unwarranted.  If it does, we must then decide whether *American Pipe* continues to toll statutes of limitations during the appeal of a dismissed, uncertified class action.

For the reasons below, we hold that the administrative denial at issue here did not terminate tolling.  We also hold that the outright dismissal of an uncertified class action ends *American Pipe* tolling and restarts class members' statute-of-limitations clocks.  Applying our first holding, we reverse the district court's dismissals of *Potter* and *Adams* and remand for proceedings consistent with this opinion.  Applying our second, we affirm the district court's dismissal of *Messer*.

I.

A.

Attorney Eric Conn successfully represented plaintiffs Sharon Potter, Brandi Jane Adams, and Johnny Messer (and thousands of other claimants) in seeking disability benefits from the Social Security Administration ("SSA"). But it turned out that Conn was a fraudster; he bribed doctors to certify false disability applications and bribed an administrative law judge to approve those applications. *See Hicks v. Comm'r of Soc. Sec.*, 909 F.3d 786, 793 (6th Cir. 2018). All told, Conn caused the SSA to pay out millions in fraudulent benefits and fees.

After Conn's scheme came to light, the SSA identified more than 1,700 approved applications that it believed might have been the product of his fraud. *Id*. at 794. The SSA began redetermining whether Conn's clients were eligible for benefits. *Id*. Many applicants took issue with how the SSA redetermined eligibility, however, and litigation ensued.

The SSA redetermined and denied plaintiffs' applications, but by then several class actions had been filed to challenge the SSA's redetermination procedures. For our purposes, two are important.[1]

The first is *Martin v. Commissioner of Social Security*, No. 7:15-cv-00046 (E.D. Ky. 2015). That case was filed on May 30, 2015 and dismissed several months later—without a class having been certified—because the named plaintiffs failed to exhaust their administrative remedies. The *Martin* plaintiffs appealed, but after both properly exhausted and filed separate individual actions, we vacated the judgment on January 16, 2018, and remanded to the district court with instructions to dismiss the case. *Martin v. Colvin*, No. 16-5527, 2018 U.S. App. LEXIS 1019, at *2 (6th Cir. Jan. 16, 2018) (order).

The second important class action is *Hughes v. Commissioner of Social Security*, No. 5:16-cv-00352 (E.D. Ky. 2016), which was assigned to then-District Judge Thapar. *Hughes* began as an individual lawsuit challenging the SSA's redetermination procedures, but became a

---

[1]The parties discuss other related class actions but, because of their similarities and overlapping dates, discussion of those cases is unnecessary.

class action on November 2, 2016, when the complaint was amended to include putative class claims. The named plaintiffs then moved to certify a class. While their motion was pending, the SSA moved to stay the case because *Hicks* was already pending in the Sixth Circuit and would likely control the merits. *See Hughes v. Berryhill*, No. CV-16-352-ART, 2017 WL 3000035, at *2 (E.D. Ky. Feb. 21, 2017). Judge Thapar granted the SSA's motion for a stay. *Id.* He expressed no view on the suitability of the claims for class treatment. But he did deny the pending motion for class certification "without prejudice" to clear his docket, adding that "[o]nce the Sixth Circuit rules on the legal issues, the plaintiffs may file any motions they deem necessary." *Id.*

Almost two years later, we held in *Hicks* that the SSA's redetermination procedures violated due process and the Administrative Procedure Act. *Hicks*, 909 F.3d at 813. Following our decision, the district court remanded the *Hughes* plaintiffs' claims to the SSA on August 13, 2019.

B.

The plaintiffs in these cases received denials from the SSA at different times relative to *Martin* and *Hughes*. The SSA denied Messer's application in July 2016. At that time, the *Martin* appeal was pending and *Hughes* had not been filed as a class action. The SSA denied Potter and Adams's applications in late 2017, while *Hughes* was stayed.

Under the relevant statute, plaintiffs had sixty days to seek judicial review of the SSA's decision to deny benefits. *See* 42 U.S.C. § 405(g). They each waited more than two years. There was, however, a reason for their delay: As absent *Hughes* class members, they believed that *American Pipe* tolled their statute of limitations while that case remained stayed before the district court. Once the district court remanded *Hughes*, plaintiffs filed their civil actions within the time provided for in the statute. Potter and Adams alleged that their actions were timely under *American Pipe* because of *Hughes*, while Messer alleged that a combination of the *Martin* appeal and *Hughes* made his action timely.

The district courts rejected each plaintiff's invocation of *American Pipe*, holding that the actions were filed out-of-time because Judge Thapar's February 2017 administrative denial of

the *Hughes* motion ended *American Pipe* tolling and restarted the statute-of-limitations clock. The *Messer* court further concluded that, even if class actions can be "stacked" for tolling purposes,[2] he could not rely on the *Martin* appeal. The district courts dismissed each case as untimely, plaintiffs appealed, and we consolidated their appeals for review.

## II.

Plaintiffs argue that the district courts erroneously applied *American Pipe* tolling. We review *de novo* a district court's determination that a complaint was filed outside the statute-of-limitations period. *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th Cir. 2007).

Distilled down, the issues in these cases are a series of "if-then" propositions. If the *Hughes* administrative denial ended *American Pipe* tolling, then no case is timely. If it did not, then Potter and Adams filed their actions within the statute of limitations. If the denial did not end *American Pipe* tolling *and* the *Martin* appeal also paused the time to file, then Messer's suit is timely. But if the *Martin* appeal had no tolling effect, then Messer's suit is untimely.

Put differently, we confront two questions: (1) does *American Pipe* tolling continue after a district court denies a motion to certify a class solely as a matter of docket management—without deciding that certification is unwarranted; and, if so, (2) does *American Pipe* tolling continue during the appeal of a dismissed, uncertified class action?

## III.

To answer these questions, we first review existing case law, starting with basic principles of *American Pipe* tolling. In *American Pipe*, the Supreme Court held "that the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. at 554. The limitations period "remains tolled for all members of the

---

[2]The district court gave Messer "the benefit of the doubt" regarding his ability to "stack tolling periods." *Messer v. Comm'r of Soc. Sec.*, No. CV-7:19-093-DCR, 2020 WL 1860695, at *7 n.4 (E.D. Ky. Apr. 13, 2020). On appeal, the SSA likewise "assume[s] . . . that Messer can rely on a chain of successive class actions." Accordingly, we do not consider this question further.

putative class until class certification is denied." *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354 (1983).

But how does *American Pipe* apply to the cases currently before us? The parties each point to one of our prior decisions and argue that binding precedent dictates the doctrine's application and the outcome of these cases. We disagree.

The SSA argues that our decision in *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988), cuts off tolling at the *Hughes* denial, dooming all three cases. The *Andrews* plaintiffs argued that *American Pipe* tolling continued after a class certification denial because the named plaintiffs had expressed an intent to file a second motion for certification and later did file such a motion. *Id*. at 150. We rejected this argument, concluding that, "[e]ven if the [class-action] plaintiff's second motion for class certification somehow revived or reactivated tolling, it came too late," because "[m]ore than thirty days"—the statute-of-limitations period in that case—"had gone by in which neither a class action nor a motion for class certification was pending." *Id*. We also found "nothing in *American Pipe* or *Crown, Cork & Seal* to indicate that mere notice by the [class-action] plaintiff of her intent to file a second motion for class certification began a new tolling period." *Id.* Instead, we reasoned that

> [i]t is the filing of a class action and the pendency of a motion to certify that suspend the running of a limitations period for putative class members, and the period for filing begins to run anew when class certification is denied. Nothing less will suffice to maintain the period of suspension.

*Id.* In the SSA's view, the *Hughes* denial stripped that action of its class character and, because there was no other motion for certification pending, the statute of limitations began to run. If that is true, the limitations period expired in May 2017, years before any plaintiff filed their action.

*Andrews* bears little resemblance to these cases, however. There, the court presiding over the predicate class action denied the first motion to certify *on the merits*, finding that the proposed class lacked commonality and that the class representative's claims were not typical of the proposed class. *Id*. at 148; *see Brown v. Orr*, 99 F.R.D. 524, 527 (S.D. Ohio 1983). And because more than thirty days passed before the action *might* have regained its class character with the filing of the second certification motion, *American Pipe* did not provide a long enough

tolling peiord.[3]  Thus, this portion of *Andrews* was very much a run-of-the-mill *American Pipe* case.

In contrast, the predicate class action here (*Hughes*) involved a denial that did not address the merits of class certification.  The reasonableness of the absent class members' reliance interests is therefore much less clear.  And to the extent that *Andrews*'s nothing-less-will-suffice language could be read to require a *pending* class-certification motion to preserve tolling, such a reading is belied by *American Pipe* itself, where plaintiffs never moved for certification.  *See American Pipe*, 414 U.S. at 542–43 (class status denied because of defendants' motion for "an order . . . that the suit could not be maintained as a class action").  This language merely left open the possibility that the class-action plaintiff's second motion to certify could "somehow revive[] or reactivate[] tolling," if it came within the statute-of-limitations period.  *Andrews*, 851 F.2d at 149.  Because *Andrews* is distinguishable, it does not dictate the outcome of these cases.

The case relied on by plaintiffs to support reversal in all three actions, *In re Vertrue Inc. Marketing & Sales Practices Litigation*, 719 F.3d 474 (6th Cir. 2013), presents a much closer question.  But it too is inapplicable.  To fully understand why, a review of its rather complicated procedural history is necessary.

The predicate class action that provided the basis for *American Pipe* tolling in *Vertrue* was *Sanford v. Memberworks, Inc.*, which was filed in the Southern District of California.  *Vertrue*, 719 F.3d at 477.  After the *Sanford* district court compelled the named plaintiff to arbitration, it denied a motion for class certification as moot.  *Sanford v. Memberworks, Inc.*, No. 02-CV-601H, 2003 WL 27382208, at *1 (S.D. Cal. June 13, 2003).  Later, however, the Ninth Circuit reversed the district court's arbitration order and revived the class claims.  *See Sanford v. Memberworks, Inc.*, 483 F.3d 956, 964 (9th Cir. 2007).  And, on remand, the district court dismissed the case on the merits without ever addressing class certification.  *Sanford*, 2008 WL 4482159, at *6 (S.D. Cal. Sept. 30, 2008).  Thus, no court ever decided the merits of class certification.

---

[3]We applied traditional equitable tolling principles to find that the plaintiffs' individual claims were timely.  *See Andrews*, 851 F.2d at 150–52.

Shortly after *Sanford* was dismissed for the final time, the *Vertrue* plaintiffs filed their class complaint. *Vertrue*, 719 F.3d at 477. Defendants moved to dismiss the suit as untimely, arguing that "any applicable tolling doctrine may not be applied to allow th[e] matter to proceed as a class action." *In re Vertrue Mktg. & Sales Pracs. Litig.*, 712 F. Supp. 2d 703, 711 (N.D. Ohio 2010). In response, plaintiffs argued that *American Pipe* tolling had paused their time to file a class action during the pendency of *Sanford*. *Id*. The district court agreed with plaintiffs and held that they could continue as a class action and avail themselves of *American Pipe* tolling because no previous court had made a "'definitive' determination regarding the propriety of class certification." *Id*. at 713.

The *Vertrue* defendants appealed to this court, arguing that the district court's decision ran afoul of our opinion in *Andrews*. In relevant part, the *Andrews* court affirmed the district court's conclusion that *American Pipe* tolling could not apply to save a second action's class claims. It noted that "[t]he courts of appeals that have dealt with the issue appear to be in unanimous agreement that the pendency of a previously filed class action does not toll the limitations period for additional class actions by putative members of the original asserted class." *Id*. at 149 (collecting cases).

> Back in *Vertrue*, we rejected the defendants' argument regarding *Andrews*:
>
> Vertrue argues that *Andrews* stands for the bright line rule that *American Pipe* tolling never applies to subsequent class actions by putative class members and that, therefore, the plaintiffs here are time-barred from seeking to pursue a subsequent class action. However, we dealt in *Andrews* with a situation in which class certification had already been denied. Here, no court has definitively ruled on class certification, as the district court dismissed the plaintiffs' actions in *Sanford* before ruling on the plaintiffs' motion for class certification. *Sanford*, 2008 WL 4482159, at *6. Because the risk motivating our decision in *Andrews*— namely, repetitive and indefinite class action lawsuits addressing the same claims—is simply not present here, we hold that the commencement of the original *Sanford* class action tolled the statute of limitations under *American Pipe*. The parties agree that if *American Pipe* tolling is allowed in this case, the plaintiffs' federal claims were timely filed. Because no court ever denied the motion for class certification in the *Sanford* action, we affirm the district court's conclusion that the plaintiffs' federal claims were timely filed.

*Vertrue*, 719 F.3d at 479–80 (footnotes omitted).

Plaintiffs focus on *Vertrue*'s use of the word "definitively," arguing that it establishes a broad, bright-line rule that a ruling on the merits of class certification is necessary to restart the statute-of-limitations clock in all circumstances. Without such a ruling, plaintiffs believe tolling continues as long as the case remains pending before the district court or on appeal. But the context of that language makes clear that the court's conclusion was far narrower.

Take this passage step-by-step. We first rejected defendants' argument that *Andrews* represented a bright-line rule against applying *American Pipe* tolling to subsequent class actions brought by putative members of the first class action. We then distinguished *Andrews* from the circumstances of *Vertrue* because in *Andrews*, "class certification had already been denied." *Id*. at 479. In contrast, "no court ha[d] definitively ruled on class certification" as to the *Vertrue* plaintiffs when they were absent members of the putative *Sanford* class. *Id*. "Because the risk motivating our decision in *Andrews*—namely, repetitive and indefinite class action lawsuits addressing the same claims—[was] simply not present [in *Vertrue*]," we held that the *Vertrue* plaintiffs were entitled to *American Pipe* tolling from "the commencement of the original *Sanford* class action." *Id*. at 479–80. And because "[t]he parties agree[d] that if *American Pipe* tolling" applied, then "the plaintiffs' federal claims were timely filed[,]" we affirmed the district court. *Id*. at 480.

Thus, *Vertrue* confronted a single issue: whether a successive class action could claim the benefit of *American Pipe* tolling. And our reasoning was confined to that question. We held that *American Pipe* tolling applied to subsequent class actions when there was not a definitive denial of class certification in the predicate class action.[4] Put differently, if the prior district court had denied class certification on the merits, a subsequent class action could not invoke *American Pipe* tolling. But if there had been no merits adjudication of class status, there was no harm in allowing *American Pipe* to apply to a successive class action. And because the parties only disputed whether the tolling doctrine applied—not how long it lasted—our holding was

---

[4]As an aside, we note that *Vertrue*'s holding may not have survived the Supreme Court's later decision in *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1806–09 (2018) ("The 'efficiency and economy of litigation' that support tolling of individual claims . . . do not support maintenance of untimely successive class actions; any additional *class* filings should be made early on, soon after the commencement of the first action seeking class certification." (citation omitted)).

appropriately limited to the conclusion that "the commencement of the original *Sanford* class action tolled the statute of limitations under *American Pipe*." *Id.*

The cases before us now are different from *Vertrue* in two important ways. First, we are not dealing with a subsequent class action and therefore *Vertrue*'s narrow "definitively" language does not apply. *Vertrue* did not contemplate subsequent *individual* filings, as shown by its focus on the risk of "repetitive and indefinite *class action* lawsuits addressing the same claims" as the dispositive concern. *Id.* at 479 (emphasis added). This risk is irrelevant to individual actions. Second, unlike the *Vertrue* court, we are deciding only how long tolling lasted—not if it ever started—because the parties before us agree that *American Pipe* tolling commenced upon the filing of the predicate class actions. No question related to the tolling doctrine's duration was ever before the *Vertrue* court because those parties "agree[d]" that the plaintiffs' federal claims were timely filed if *American Pipe* tolling was allowed. *Vertrue*, 719 F.3d at 480. Indeed, comparing *Vertrue* to these cases shows that the parties in one appeal contest only what the parties in the other conceded. In *Vertrue*, the parties argued about whether *American Pipe* tolling applied, but not how long it lasted; here, the parties dispute the length of tolling, but not its initial application. Thus, our prior holding—which answered only the threshold question of whether *American Pipe* tolling was permissible at all for subsequent class actions—is not helpful to our current inquiries.

IV.

Because we lack controlling case law, we turn to the rationale of *American Pipe* tolling itself to guide our decision. *American Pipe* tolling is the product of a "careful balancing of the interests of plaintiffs, defendants, and the court system." *Korwek v. Hunt*, 827 F.2d 874, 879 (2d Cir. 1987). The doctrine aims to protect the putative class members' reliance interests, satisfy the need for defendants to have fair notice of claims being brought against them, and promote judicial efficiency. *See Chavez v. Occidental Chem. Corp.*, 933 F.3d 186, 198 (2d Cir. 2019). We will first determine how these interests align with applying *American Pipe* tolling when a district court denies a certification motion for administrative reasons, then consider how they apply to appeals of dismissed, uncertified class actions. Along the way, we will also consider how our sister circuits have answered these questions.

A.

i.

Class actions "both permit[] and encourage[] class members to rely on the named plaintiffs to press their claims." *Crown, Cork & Seal*, 462 U.S. at 352–53. Other courts have recognized that "*American Pipe* tolling extends as far as is justified by the objectively reasonable reliance interests of the absent class members." *Bridges v. Dep't of Md. State Police*, 441 F.3d 197, 211 (4th Cir. 2006); *see also Chavez*, 933 F.3d at 198 (describing "reasonable reliance by putative class members on the pending class action" as one of the "principles from which *American Pipe* tolling derives"); *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1380 (11th Cir. 1998) (en banc) ("The purpose of [*American Pipe*] tolling is to encourage class members reasonably to rely on the class action to protect their rights.").

Here, absent *Hughes* class members (like plaintiffs) reasonably relied on class representatives to continue to represent them and press their claims after the administrative denial of the motion for class certification. Judge Thapar's order gave no indication that class-action status was inappropriate or that the named plaintiffs were ill-suited to their task; it merely stayed *Hughes* pending our resolution of a related appeal and denied the motion for class certification without prejudice. There was no finding that the proposed class lacked numerosity or commonality, or that the class representatives lacked typicality or adequacy. *See* Fed. R. Civ. P. 23(a). In fact, the order provided that "[o]nce the Sixth Circuit rules on the legal issues, the [*Hughes*] plaintiffs may file any motions they deem necessary." Contrary to the SSA's argument, nothing in Judge Thapar's order indicated that the named plaintiffs were relieved of their duty to represent putative class members. Rather, a reasonable absent class member would have seen Judge Thapar's order for what it was: a case management tool meant only to clear his docket ahead of a long stay. Thus, the reasonable reliance interests of the putative *Hughes* class members favor applying *American Pipe* tolling to these circumstances.

ii.

For *American Pipe* to apply, tolling must also be consistent with the purposes served by statutes of limitations. *See American Pipe*, 414 U.S. at 554; *Crown, Cork & Seal*, 462 U.S. at

352. "Limitations periods are intended to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights[.]" *Crown, Cork & Seal*, 462 U.S. at 352. Both of "these ends are met when a class action is commenced." *Id.* First, "a class complaint notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." *Id.* at 353 (internal quotation marks omitted). And second, "class members who do not file suit while a class action is pending cannot be accused of sleeping on their rights," due to a class action's representative nature. *Id.* at 352.

*Hughes* made the SSA aware of the substantive claims being brought against it and of the number and generic identities of the putative class members. Judge Thapar's order changed nothing; it expressed no opinion on the merits of the claims against the SSA or whether "the suit [was] inappropriate for class action status." *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1806 (2018) (quoting *American Pipe*, 414 U.S. at 553). Nor did it alter the number or identities of the putative class members. And, as explained above, *Hughes* class members cannot be accused of sleeping on their rights given their reasonable expectation that the class representatives would continue to press their claims when the stay was lifted. Thus, allowing tolling in these circumstances is consistent with the purposes of the statute of limitations.

iii.

Finally, *American Pipe* tolling serves class actions' principal purpose: "efficiency and economy of litigation." *American Pipe*, 414 U.S. at 553; *see China Agritech*, 138 S. Ct. at 1811. To that end, this doctrine avoids "a needless multiplicity of actions." *Crown, Cork & Seal*, 462 U.S. at 351.

These efficiency interests would be best served by applying *American Pipe* tolling in the circumstances of the *Hughes* denial. If *American Pipe* tolling does not extend beyond an administrative denial like this one, absent class members would need to file individual intervention motions or suits. The result would be a flood of individual filings without any prior determination that these filings were necessary or that the filers were not served by the still-pending putative class action. Indeed, many (if not all) of these filings would likely face the

same fate as *Hughes*: an administrative stay.  And, if the court later addresses the merits of class certification and certifies a class, these individual filings will have done nothing but clutter district court dockets.  That is "precisely the situation that Federal Rule of Civil Procedure 23 and the tolling rule of *American Pipe* were designed to avoid."  *Crown, Cork & Seal*, 462 U.S. at 351.  Thus, *American Pipe* tolling's efficiency interests support its application after administrative denials like that which occurred in *Hughes*.

iv.

Because all of the interests underpinning *American Pipe* support continued tolling under these circumstances, the *Hughes* denial did not restart plaintiffs' statute-of-limitations clock.

We recognize that this conclusion seems at odds with the only other court of appeals that has squarely considered this issue.  In *Bridges*, the Fourth Circuit purported to adopt "the bright-line rule that the statute of limitations 'remains tolled for all members of the putative class until class certification is denied' for whatever reason."  441 F.3d at 211 (emphasis omitted) (quoting *Crown, Cork & Seal*, 462 U.S. at 354).  The SSA asks us to adopt this approach, but we decline this invitation for a few reasons.

First, the Fourth Circuit's purported approach lacks any basis in Supreme Court precedent.  The phrase "for whatever reason" is the Fourth Circuit's own invention; it appears nowhere in *Crown, Cork & Seal*, which dealt with a certification motion that was denied on the merits.  *See* 462 U.S. at 347–48.

Second, the *Bridges* court's repeated assertion that it was recognizing and applying a bright-line rule is belied by its analysis, which instead reveals a far more fact-intensive approach.  The court discussed at length the reasonable expectations of absent class members who had knowledge of the denial order *and* subsequent actions of the class representatives.  *See Bridges*, 441 F.3d at 211 ("If the denial order left doubts in the minds of reasonable absent class members whether they would be protected, then the acts that followed entry of that order surely put the issue to rest."); *id*. at 212 ("The individual plaintiffs actively pursued settlement negotiations for themselves, and they so advised absent class members. . . . Such conduct by the representative parties was inconsistent with the case proceeding as a class action . . . .").  Furthermore, the

Fourth Circuit couched its conclusion on this issue in the "objective[] reasonable[ness]" of an absent class member. *Id.* at 213. "Objective reasonableness" is a test that usually disfavors bright-line rules. *See, e.g.*, *United States v. Ellis*, 497 F.3d 606, 612 (6th Cir. 2007). So too of equitable doctrines like *American Pipe* tolling. *See Griffin v. Rogers*, 399 F.3d 626, 639 (6th Cir. 2005) (quoting *Harris v. Hutchinson*, 209 F.3d 325, 328 (4th Cir. 2000)); *see also Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2051 (2017) (explaining that "the source of the tolling rule applied in *American Pipe* is the judicial power to promote equity"). In short, we do not read *Bridges* as necessarily having adopted a bright-line rule; had it done so, we would have expected the decision to have noted the denial of class certification and left it at that.

Finally, the Fourth Circuit did not confront a situation like this one, where the denial of class certification was made without prejudice alongside an administrative stay. So it had no occasion to assess the "would-be plaintiffs' equities" or the unique considerations that this case presents. *Bridges*, 441 F.3d at 213.

Accordingly, we hold that the *Hughes* administrative denial did not terminate *American Pipe* tolling, so the actions filed by Potter and Adams are timely. We therefore reverse the district courts' dismissal of those actions.

## B.

For Messer's suit to be timely, he must be able to claim an additional period of *American Pipe* tolling from the *Martin* appeal. Unfortunately for him, the courts of appeals that have considered this issue are unanimous that the dismissal of an uncertified class action terminates *American Pipe* tolling and resumes the running of statutes of limitations as to absent class members. *See, e.g.*, *Collins v. Village of Palatine*, 875 F.3d 839, 845 (7th Cir. 2017) ("An uncertified class-action suit is decidedly not a class action once all class claims have been dismissed. The statute of limitations immediately resumes."); *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 517 (5th Cir. 2008) (holding that, while members of a certified class may continue to rely on representatives during an appeal, "[t]he same result does not flow for members of a putative class that has not been certified"); *Stone Container Corp. v. United States*,

229 F.3d 1345, 1355 (Fed. Cir. 2000) ("[T]olling ends with the district court's dismissal of the class action.").

This result also aligns with the general rule that appealing an unfavorable class-action decision does not preserve *American Pipe* tolling.  *See Giovanniello v. ALM Media, LLC*, 726 F.3d 106, 117 (2d Cir. 2013) ("If the [Supreme] Court had contemplated that tolling continued . . . through appeal, there would be no need for class members to take action to protect their rights [after a denial of class certification].");  *Armstrong*, 138 F.3d at 1382 (*American Pipe* "clearly assumed that tolling should end when the district court denies class certification, not after the appeals process has run and some later order is entered.");  *Hall v. Variable Annuity Life Ins. Co.*, 727 F.3d 372, 376 (5th Cir. 2013) ("[T]he unsuccessful appeal of either a decertification or a denial of certification does not extend the tolling period.").[5]

This rule makes sense when considering the purposes of the tolling doctrine.  "When the [named] plaintiff's own claim is dismissed, he can no longer be the class representative." *Collins*, 875 F.3d at 846 (internal quotation marks and citation omitted).  The decision to dismiss is a de facto determination that the class representative lacks adequacy or typicality.  *See* Fed. R. Civ. P. 23(a)(3)–(4).  Therefore, absent class members can no longer reasonably rely on the named class representative to protect their rights and must take action themselves.

A contrary rule would also contravene the reasons for statutes of limitations.  While the filing of a class complaint puts the defendants on notice of the nature and scope of the claims against them, the dismissal of that complaint puts them back at ease.  *See Collins*, 875 F.3d at 845.  Moreover, while the district court can usually decide a promptly filed motion to dismiss relatively quickly—often before the certification motion, which must be decided at an "early practicable time," Fed. R. Civ. P. 23(c)(1)(A)—appeals stretch for months or years.  Thus, applying *American Pipe* tolling during an appeal would mean that *every dismissed class action* would significantly extend an absent class member's statute of limitations, allowing evidence to

---

[5]We do not foreclose the possibility of an exception to this rule when the appellate court reinstates the action's class character, as some courts have suggested in dictum.  *See Hall*, 727 F.3d at 376 n.8 ("If a denial of certification is *reversed* on appeal, the putative class members can claim the benefit of uninterrupted tolling from the original class action filing date.").  But even if that exception exists, it would not apply here because we remanded *Martin* with instructions to dismiss the case as moot.  We did not reinstate its class character.

be lost, memories to fade, and witnesses to disappear. *See American Pipe*, 414 U.S. at 554. Such a rule would also fly in the face of judicial economy by encouraging the filing of frivolous class actions, aimed not at efficiently redressing harms but at buying time for individual claims.

Consistent with our sister circuits' case law and the rationale of *American Pipe* tolling, we hold that once an uncertified class action is dismissed, *American Pipe* tolling ceases, and the class members' individual statute-of-limitations clocks begin running. This means that the pendency of the *Martin* appeal did not suspend Messer's time to file an individual action. Accordingly, Messer's action was untimely, and we affirm the district court's judgment.

V.

There is one more loose end to tie up. Messer asserts that he is entitled to equitable tolling. But "[i]t is well-settled that this court's function is to review the case presented to the district court, rather than a better case fashioned after an unfavorable order," so "[a]rguments not squarely presented to the district court are not reviewed on appeal." *Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522, 528 (6th Cir. 2014) (quotation omitted). Messer did not raise a traditional equitable-tolling argument below, instead relying solely on *American Pipe*. He argues that reference to that tolling rule was enough to preserve an equitable-tolling argument because *American Pipe* is an equitable doctrine. Yet in making his equitable-tolling argument now, he points to factors that differ from *American Pipe* tolling, including his reasonable uncertainty regarding *American Pipe* tolling's duration, his diligence in filing suit, and the lack of prejudice faced by the SSA. This is a textbook example of a "better case fashioned after an unfavorable order" that incorporates "[a]rguments not squarely presented to the district court." *Id.*

Messer also argues that, even if he forfeited equitable tolling, the Court should exercise its discretion to still consider that argument. "This court will exercise its discretion to entertain issues not raised before the district court only in exceptional cases or when application of the rule would produce a plain miscarriage of justice." *Id.* (quotation marks and brackets omitted). Messer does not explain why he failed to raise his equitable tolling argument before the district

court, or why a miscarriage of justice would occur if we adhere to our usual rule, so we decline to excuse his forfeiture.

## VI.

For these reasons, we reverse the dismissals in *Potter* (Case No. 20-5550) and *Adams* (Case No. 20-5551) and remand those cases for proceedings consistent with this opinion. We affirm the district court's judgment in *Messer* (Case No. 20-5552).